## STATE v. JULIUS R. ANDREWS.

165 N. W. (2d) 528.

February 7, 1969—No. 40864.

*C. Paul Jones,* State Public Defender, and *Ronald C. Elmquist,* for appellant.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, and *J. Dennis O'Brien,* Special Assistant Attorney General, for respondent.

PETERSON, JUSTICE.

Two individuals equally participated in a serious crime, but the charges against them and the sentences imposed were substantially unequal, which poses difficult issues involving constitutionally guaranteed equal protection of the laws for appellant accused and the limitations of judicial authority over the executive function of criminal prosecution, reaching well beyond this case. A less difficult issue, more narrowly

limited to the instant case, is whether appellant was accorded a trial by an impartial jury.

■   Appellant, Julius R. Andrews, and one Glenn V. Schwarting were simultaneously apprehended during flight from the scene of a burglary, and each was charged by identical complaints and informations with first-degree burglary. They were tried separately on successive days. Schwarting, after trial to the court on a reduced charge of third-degree burglary, was convicted and sentenced to imprisonment for 5 years. Appellant, after a jury trial on the original charge of first-degree burglary, was convicted and sentenced to imprisonment for up to 20 years. We are advised, however, that neither is now in prison, each having been released by the parole board after serving 2 years.

It is appellant's claim that he was denied his constitutional right to equal protection of the laws as the result of an arbitrary and discriminatory decision of the prosecutor to treat him more severely than his accomplice, notwithstanding the fact that both were guilty of the crime of first-degree burglary.[1] Although Schwarting was no less guilty than he, appellant in effect argues, Schwarting, either as a result of the prosecutor's unilateral decision or as a result of a chambers conference between the prosecutor and Schwarting's counsel in the nature of plea bargaining, was accorded a leniency which without apparent reason was subsequently denied to him. The record is obscure, if not silent, as to what considerations impelled the prosecution to grant leniency to Schwarting[2]

---

[1] Appellant did assert his innocence at trial, but the sufficiency of the evidence to convict him is not contested on appeal. The testimonial and scientific evidence offered against appellant, as it was against Schwarting, compellingly establishes guilt of that crime.

[2] Where, as the result of a plea bargain, a defendant pleads *guilty* to a lesser degree of the offense than that with which he is charged, the reasons for the prosecutor's action and the court's acceptance of the plea necessarily are disclosed upon the record, both because of statutory requirement, Minn. St. 630.30, and our own admonition that the court has a "proper role of discreet inquiry into the propriety of the settlement submitted for judicial acceptance," including "a judicial responsibility to protect society against a defendant's being permitted to bargain for a plea excessively lenient for the gravity of the crime apparently in fact committed." State v. Johnson, 279 Minn. 209,

or, if it was indeed the result of a plea bargain, why the same bargain was not negotiated with appellant.

What the record shows concerning the nature and sequence of the proceedings against Schwarting is this: After a jury was impaneled for the trial of Schwarting and after the county attorney had made his opening statement, the trial recessed; after a conference of undisclosed content was had in chambers, presumably between counsel for the prosecution and the defense, Schwarting waived his right to a jury trial; the jury was excused; an amended information was thereupon filed charging him with the lesser crime of third-degree burglary, to which Schwarting pleaded not guilty and trial proceeded before the court alone; the prosecution introduced its substantial evidence against him; Schwarting offered no resistance to the introduction of that evidence and introduced no evidence in his own behalf; and the court adjudged him guilty and imposed sentence.

What the record shows of the proceedings against appellant is this: A jury was impaneled and the county attorney made an opening statement similar to that in the Schwarting case; the trial proceeded without interruption and with much the same evidence introduced against appellant as was introduced against Schwarting; the jury found him guilty; and the court imposed the maximum sentence upon him, with the observation that he considered appellant a "dangerous" man and that he should be required to serve the whole of the sentence imposed.

An affidavit of appellant's trial counsel presented to this court proffers evidence that the unequal result may have been the result of inequality in the opportunity for plea bargaining. It states that "affiant did engage in plea negotiations with the prosecutor" and that "[t]o the best of affiant's recollection and belief, all such plea negotiations involved the

215, 216, 156 N. W. (2d) 218, 223. Where, however, a defendant pleads *not guilty* to a lesser degree of the offense with which he is originally charged, the statute does not require such disclosure and there is less occasion for such judicial scrutiny for, as we said in State v. Johnson (279 Minn. 215, 156 N. W. [2d] 223), "[t]he ultimate judicial responsibility must be to make reasonably certain that a person innocent of *any* crime has not been improperly induced to plead guilty to a crime."

condition that appellant enter a plea of guilty." We gather from this that appellant had apparently asked that the charge against him be reduced to third-degree burglary, as in the case of Schwarting, and that he likewise be permitted to enter a plea of not guilty to that lesser charge. We can only assume that the prosecutor may have been willing to reduce the charge against appellant if he in turn was willing to plead guilty. With so much of the argument now addressed to alleged discrimination in the terms of plea bargaining, it is regrettable that the affiant attorney left so much unanswered with respect to what actually occurred in any such negotiations.

Appellate counsel, who was not appellant's counsel at trial, attempts to establish a factual inference that no rational basis existed for the disparate treatment in that nothing in the evidence suggests that appellant was a more active participant in the crime than Schwarting; that appellant's prior criminal record was no worse than Schwarting's; that Schwarting gave the prosecution no greater cooperation than did appellant; and that their relative rehabilitation potentials were not notably different.[3] This argument in effect concedes that differences in the record of prior but unrelated crimes, differences in the prompting or performance of the particular crime or, even absent such differences, differences in cooperation with the state upon prosecution for the crime or in responsiveness to punishment upon conviction are factors which afford a rational basis for differential prosecution. The array of elements involved in an evaluation of such factors, or other similar factors, are obviously too numerous and complex to test appellant's categorical claim on that basis alone.

---

[3] A faithful recitation of appellant's claims requires us to reiterate the statement in his trial counsel's affidavit that "consistently before and during his trial, the appellant maintained that he was the victim of racial prejudice and the affiant brought this matter to the attention of the court in the form of a motion for a change of venue." Appellant is black; Schwarting is white. Although we should not hesitate to vindicate appellant's undoubted constitutional right against any such invidious discrimination, the record is devoid of evidence that the proceedings were in fact a product of racial prejudice either by court or counsel. The motion for a change of venue was not improperly denied.

Viewed either as a difference in the charge initially made against multiple defendants in the same criminal act or as differences subsequently resulting from plea bargaining, the controlling considerations are essentially the same, for the challenged result is a difference in punishment for the same crime. What is challenged in either case is the discretionary act of the prosecutor as an official of the executive branch of government—the claim being that the act was an abuse of discretion because it was arbitrary and discriminatory.[4]

We do not doubt that there may be situations not manifested in this record in which the prosecutorial actions of the state may be held to deny a criminal defendant's right to equal protection of the laws, recognizing

---

[4] Although we do not consider the case in the exclusive context of plea bargaining, it is well to note that the prosecutor's participation is discretionary. He has no duty to initiate plea bargaining, and, except perhaps only as to the constitutional limitation now asserted by appellant, has no duty to make a bargain. A plea bargain, moreover, ordinarily contemplates that an accused will plead guilty, such plea being the quid pro quo for the reduction of the charge against him. We do not know what bargain, if any, may have been negotiated with Schwarting or what benefit, if any, may have accrued to the prosecution. Assuming that there was a bargain and that the benefit to the prosecution was the waiver of a jury trial (with some saving of time and expense, presumably, by an agreement to submit evidence on the basis of the transcript from the preliminary hearing in municipal court), appellant's claim of right to equality of bargaining opportunity is equivocal: Although he apparently asserts a constitutional right to precisely the same bargain as Schwarting, appellant does not actually state that he asked for a reduction of the charge to third-degree burglary with the opportunity for trial to the court, but argues, instead, that it would have been unconstitutional for the prosecution to insist, as a condition of a reduction in the charge, that he waive his right to trial by jury. The constitutional argument then tends to shift from a claim of right to equality of bargaining to an apparent claim that any plea bargaining which contemplates a plea of guilty would be an unconstitutional compulsion to waive a trial by jury. If that were so, meaningful plea bargaining with an accused would be practically impossible. We would not intimate, moreover, that a bargaining insistence upon a plea of guilty from one defendant—once the state's evidence had been so successfully tested against his codefendant at trial—is any more unconstitutionally discriminatory than would be differential leniency had the codefendant turned state's evidence.

that the Constitution commands all branches of our government, including, we think, a county attorney as an executive official. Even so, however, as the United States Supreme Court declared in Snowden v. Hughes, 321 U. S. 1, 8, 64 S. Ct. 397, 401, 88 L. ed. 497, 503, the unequal administration of a statute by state officials will not be held a denial of equal protection "unless there is shown to be present in it an element of intentional or purposeful discrimination." Or, as that court recently stated in the specific context of criminal law enforcement, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." Oyler v. Boles, 368 U. S. 448, 456, 82 S. Ct. 501, 506, 7 L. ed. (2d) 446, 453.[5] We have construed our state constitutional guarantee to the same effect. State v. Anderson, 280 Minn. 461, 159 N. W. (2d) 892.[6]

A thorough opinion written by Judge Warren Burger in Newman v. United States, 127 App. D. C. 263, 264, 382 F. (2d) 479, 480, addressed to basically the same claim asserted by this appellant,[7] reflects the inherent limitation upon judicial intervention in matters of executive discretion: [8]

---

[5] The claim in that case was that equal protection of the laws was denied because only a selected few criminals were administered the heavier penalties enforced under the state recidivist statutes.

[6] Defendant prostitutes in that case contended that the prosecutor's decision to charge some prostitutes under the state prostitution statute but other prostitutes under the less severe prostitution ordinance of a city was inherently arbitrary and discriminatory. And, as here, the defendants undertook to negative the existence of any rational basis for the selectivity of such charging practice. Although implicitly acknowledging that the constitutional right of equal protection of the laws might be applicable, we rejected the claim on the ground that the evidence was inadequate to establish a denial of that right.

[7] Appellant there protested that his constitutional rights were denied when the United States attorney consented to a guilty plea tendered by appellant's codefendant to a lesser included offense under the indictment while refusing to consent to the same plea for the appellant.

[8] The severity of the sentence imposed in this case, it may be noted parenthetically, was not alone the result of the prosecutor's discretionary act, for that sentence, irrespective of the degree of the crime with which appellant was charged and of which he was found guilty, was as much the result of a

"The issue in this Court, of course, must be resolved on the basis of the constitutional powers of the Executive. Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought.

"The United States Attorney, under the direction and control of the Attorney General, is the attorney for the Executive, charged with faithful execution of the laws, protection of the interests of the United States, and prosecution of offenses against the United States. As such, he must have broad discretion. * * *

* * * * *

"To say that the United States Attorney must literally treat every offense and every offender alike is to delegate him an impossible task; of course this concept would negate discretion. Myriad factors can enter into the prosecutor's decision. Two persons may have committed what is precisely the same legal offense but the prosecutor is not compelled by law, duty or tradition to treat them the same as to charges. On the contrary, he is expected to exercise discretion and common sense to the end that if, for example, one is a young first offender and the other older, with a criminal record, or one played a lesser and the other a dominant role, one the instigator and the other a follower, the prosecutor can and should take such factors into account; no court has any jurisdiction to inquire into or review his decision.

"It is assumed that the United States Attorney will perform his duties and exercise his powers consistent with his oaths; and while this discretion is subject to abuse or misuse just as is judicial discretion, deviations

---

judicial act of discretion by the same court which had sentenced Schwarting. Sentences imposed by a trial court are not ordinarily reviewable. State ex rel. Miletich v. Tahash, 275 Minn. 505, 148 N. W. (2d) 134; State v. Bohall, 280 Minn. 1, 157 N. W. (2d) 845. A claim that differential sentences by a court may constitute a denial of equal protection of the laws would seemingly be little different and no less thorny than the claim asserted only against the prosecutor. This dictum is tendered only to indicate the probable scope of this constitutional claim and its potential impact upon the administration of criminal justice.

from his duty as an agent of the Executive are to be dealt with by his superiors."

The record before us in no event would establish that there has been such abuse of prosecutorial discretion as would warrant the intervention of this court on the ground that appellant had been denied the equal protection of the laws. The prosecutor, like other state officials, is entitled to the presumption that he has acted fairly in the discharge of his official functions, Petition of Groban, 352 U. S. 330, 334, 77 S. Ct. 510, 513, 1 L. ed. (2d) 376, 381, and a discriminatory purpose will not be presumed. Snowden v. Hughes, 321 U. S. 1, 8, 64 S. Ct. 397, 401, 88 L. ed. 497, 503. A record that is at best obscure as to the nature of the prosecutor's decision and that is wholly silent as to the considerations which motivated such decision falls far short of meeting the challenger's burden of proof.[9]

■ Appellant contends, as a separate issue, that he was denied his constitutional rights of due process and trial by an impartial jury because nine of the jurors, having on the day prior heard the prosecution's opening statement in the aborted jury trial of Schwarting, in which appellant's alleged participation as an accomplice was disclosed, had "prejudicial knowledge and prior experience with the facts and circumstances of appellant's accusation." We hold that appellant waived his right to challenge the nine jurors on grounds of bias and that there was in any event no evidence that his jury was not impartial.

The test of an impartial juror is not that he shall be completely ignorant of the facts and issues when sworn, but that he "can lay aside his impressions or opinion and render a verdict based on the evidence presented in court." Irvin v. Dowd, 366 U. S. 717, 723, 81 S. Ct. 1639,

---

[9] Where, as here, the challenger is guilty of the crime of which he was charged and convicted and his claim to equal protection of the laws is basically a claim for equal leniency—a claim for equal protection of the law against its otherwise lawful sanctions for the crime in fact committed—the imposition of a substantial burden of proof upon the convicted challenger does not seem unreasonable. See, State v. Hicks, 213 Ore. 619, 325 P. (2d) 794, certiorari denied sub nom. Hicks v. Oregon, 359 U. S. 917, 79 S. Ct. 594, 3 L. ed. (2d) 579.

1643, 6 L. ed. (2d) 751, 756. Actually, although hearing the prosecutor's opening statement in the Schwarting case, the jurors heard no evidence in that trial regarding either accused, for the change in the proceedings against Schwarting precluded the submission of any evidence to the jury. What those jurors heard in the opening statement at appellant's trial the next day was essentially the same as what they had heard the day before and could not have influenced a prospective juror any more than it would a sitting juror. There is no indication that the jurors knew any facts, having heard only the prosecution's statement of what it expected to prove. Appellant's assertion that the jury must have known of Schwarting's subsequent conviction and were accordingly influenced by that judgment is, on this record, sheer speculation. Appellant could have ascertained any relevant fact respecting a juror's prior knowledge or bias by interrogation of the jurors in voir dire, but did not do so. Having failed to challenge any juror for cause, the right of challenge had been waived. Kuske v. Jevne, 178 Minn. 296, 226 N. W. 938; Atkinson v. Mock, 271 Minn. 393, 135 N. W. (2d) 892.

Affirmed.