**UNITED STATES of America, Appellee,**

v.

**Quincy JONES, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Phillip Patrick BUTLER, Appellant.**

**Nos. 88–1281, 88–1305.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 21, 1988.

Decided Jan. 17, 1989.

James Knappenberger, St. Louis, Mo., for Jones.

Lee Lawless, St. Louis, Mo., for Butler.

Frederick Dana, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before WOLLMAN and BEAM, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

WOLLMAN, Circuit Judge.

Defendants Quincy Jones and Phillip Patrick Butler appeal from judgments entered in the district court[1] upon verdicts returned after a joint jury trial. Jones and Butler were found guilty of conspiracy to possess with intent to distribute and to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1982). Jones alone was convicted of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (1982) and of traveling in interstate commerce with intent to facilitate the distribution of narcotics in violation of 18 U.S.C. § 1952 (1982) (the Travel Act). We affirm.

## I.

Although Jones has raised a number of challenges to his conviction, we conclude that only his challenge to certain jury instructions merits discussion.

■ Jones argues that the jury instructions given with respect to the conspiracy charge failed to adequately inform the jury of the element of agreement. We disagree. "A district court has wide discretion in formulating appropriate jury instructions. A defendant is not entitled to a particularly worded instruction where the instructions given adequately and correctly cover the substance of the requested instruction." *United States v. Walker*, 817 F.2d 461, 463 (8th Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 108 S.Ct. 181, 98 L.Ed.2d 134 (1987).

"An agreement to commit an illegal act is one of three elements the government must prove in a conspiracy case." *United States v. Raymond,* 793 F.2d 928, 931–32 (8th Cir.1986). As part of the conspiracy instructions the court charged:

A conspiracy is a combination of two or more persons, by concerted action, to accomplish some unlawful purpose, or to accomplish some lawful purpose by unlawful means. So, a conspiracy is a kind of "partnership in criminal purposes," in which each member becomes the agent of every other member. The gist of the offense is a combination or agreement to disobey, or to disregard the law.

Mere similarity of conduct among various persons, and the fact they may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy.

However, the evidence in the case need not show that the members entered into any express or formal agreement, or that they directly, by words spoken or in writing, stated between themselves what their object or purpose was to be, or the details thereof, or the means by which the object or purpose was to be accomplished.

This adequately informed the jury of the requirement that they find an agreement to commit an illegal act. We have reviewed Jones' additional argument that the conspiracy instruction improperly shifted the burden of proof and find it to be without merit.[2]

We have considered Jones' remaining contentions and find that they are without merit. Accordingly, we affirm Jones' conviction on all counts.

## II.

### A.

■ We turn then to Butler's arguments for reversal of his conviction. Butler first

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern and Western Districts of Missouri.

2. We note that the instruction in question omits a substantial portion of the instruction upon which it is patterned, E. Devitt & C. Blackman, *Federal Jury Practice and Instructions* § 27.04 (1977). Our holding that the instruction was adequate in this case does not necessarily imply that it would serve as a surrogate for section 27.04 in all cases.

contends the district court erred in refusing to strike a venire panel member for cause. Butler used one of the joint defense's eleven peremptory challenges to strike her. He argues that he thus was denied his allotted number of peremptory challenges.

"The district court has broad discretion in determining whether to strike jurors for cause, and we will reverse only where actual prejudice has been demonstrated." *United States v. Huddleston*, 810 F.2d 751, 753 (8th Cir.1987) (per curiam). We conclude that the district court did not abuse its discretion. During the voir dire examination by Butler's counsel, Mr. Lawless, the following exchange took place:

MR. LAWLESS: And as a general question to all of you, is there anyone here who with regard to the whole subject of drugs is so offended by their use, possession, whatever, that they would have difficulty sitting here and judging this case solely on the evidence as it comes in at this trial? Yes, ma'am.

MS. DAHMAN: Dahman.

MR. LAWLESS: Yes, ma'am?

MS. DAHMAN: I do feel very strongly, raising teenagers.

MR. LAWLESS: I appreciate it. It's a problem.

I guess the question is this: Has it been something that's affected your family? Have your kids come home and said people have offered them drugs?

MS. DAHMAN: No.

MR. LAWLESS: Do you feel so strongly about drugs that you think it might color or influence the way you might listen to the evidence here if you were picked as a juror?

MS. DAHMAN: *I honestly don't know. I would try, you know. I would hope that it wouldn't, but I don't know.*

MR. LAWLESS: I think everyone here would probably try. I guess the question is, how much doubt? We can't obviously be inside you and know exactly what you're thinking about. How much doubt do you have about your own ability to do that?

MS. DAHMAN: Well, enough that I spoke up.

Trial Transcript, Vol. I at 61–62 (emphasis added).

In *United States v. Murray*, 618 F.2d 892 (2d Cir.1980), a prospective juror stated that she was "against drugs," had a nephew that was on drugs, and could not guarantee that her feelings about drugs would not affect her judgment. *Id.* at 899. In concluding that the district court did not abuse its discretion in denying the defendant's challenge for cause, the court wrote that "[t]he crucial fact is that [the prospective juror] * * * stated in effect that she would do her best to determine the case on the evidence presented." *Id.* In contrast to the juror in *Murray*, Ms. Dahman's family had not been affected by drugs. Like the juror in *Murray*, Ms. Dahman stated that she would try to base her decision on the evidence, but honestly did not know if her feelings would influence the way in which she viewed the evidence. We therefore conclude that the district court did not abuse its discretion in refusing to strike Ms. Dahman for cause.

### B.

■ Butler's second argument is that the district court erred in overruling his objection to alleged improper statements made in the government's closing argument. In a portion of his argument, the prosecutor argued:

It's Phillip Butler who brings the claim check—Government's Exhibit 6—back to the airport. It's Phillip Butler who says, "No, that's not my bag. I don't have anything to do with this." Because you know why? Because he knew there was cocaine in that bag. *He lied to the agents at the top of the steps. He lied, because he knew.* He didn't give permission, because he knew, and it was Quincy who sent Phillip Butler to the airport.

Trial Transcript, Vol. IV at 9–10 (emphasis added). Later in the argument, the prosecutor again stated, "Phillip is lying in this case. He lied at the top of the steps," *Id.* at 13, at which point Butler objected.

We have stated that it is improper for the prosecutor to express his opinion that a defendant has lied on the witness stand. *See United States v. Peyro*, 786 F.2d 826, 831 (8th Cir.1986). The prosecutor's statements in this case, however, were fair characterizations of uncontroverted evidence, rather than improper expressions of the prosecutor's personal opinion of Butler's credibility. Two DEA agents testified that they stopped Butler in the parking garage near some escalators, at which point he denied having been in the baggage claim area. They further testified that later, after being confronted with an airline employee who had seen him there earlier, Butler changed his story and admitted to having been there to claim a bag. Butler himself testified to these facts on direct examination by his counsel:

Q. And on your way to leave, were you stopped?

A. Yes, I was.

Q. And did the agents that stopped you ask you if you had just tried to pick up a piece of luggage?

A. Yes, they did.

Q. And did you tell them that you had not?

A. Yes, I did.

Q. That wasn't true, was it?

A. It was not true.

Q. Why did you tell them that?

A. I was scared.

   *    *    *    *    *    *

Q. And did they ask you to go back to the TWA ticket office with them? I mean, to the baggage claim area?

A. Yes, they did.

Q. And did you voluntarily go back with them?

A. Yes, I did.

Q. And when you got back to that office, did they ask—did someone there say that you were the person that just had been there to get a bag?

A. Yes, they did.

Q. And did you initially dispute that?

A. Yes, I did.

Q. And how long was it before you agreed that you had in fact been there to pick up a bag?

A. About five minutes.

Trial Transcript, Vol. III at 90–91.

We therefore conclude that the prosecutor's statements, when viewed in their proper context as referring to Butler's admitted untrue statement to the DEA agents that he had not been in the baggage claim area, were not improper. We thus find no error.

We affirm the convictions of both defendants on all counts.