STATE of Minnesota, Respondent,

v.

Benjamin Matthew LOGAN, Appellant.

No. C3–94–178.

Supreme Court of Minnesota.

Aug. 4, 1995.

John M. Stuart, State Public Defender, Marie L. Wolf, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Michael O. Freeman, Hennepin County Atty., Mark V. Griffin, Asst. County Atty., Minneapolis, for respondent.

## OPINION

COYNE, Justice.

Defendant, Benjamin Matthew Logan, appeals from judgment of conviction of two counts of first-degree murder in the killing of two clerks during an armed robbery of a Minneapolis gun store on the evening of June 23, 1992. The decisive issue on appeal is whether the trial court erred in denying a defense challenge for cause of one of the jurors, who candidly said he would be more inclined to believe the testimony of police officers than of other witnesses. If the trial court erred in allowing this juror to serve, then defendant was deprived of a fair trial by an impartial jury of 12 people and he is entitled to a new trial. Concluding that the trial court erred and that defendant was denied a fair trial by an impartial jury, we reverse the judgment of conviction and remand for a new trial.

In answering questions in the preliminary jury questionnaire, prospective juror K.G. said that he would favor the testimony of police officers over the testimony of other witnesses, that it was "their job to bring forth sound evidence." He also said that he believed that there had been an increase in violent crime that must be dealt with and that he was certain this feeling would carry "some weight" with him in deciding defendant's guilt, although he would "try" to put it aside.

Asked at *voir dire* by the judge to "expand on that a little bit," K.G. said that in his view police officers are "in the law and order business" and he had "never really had the situation where [he] had to feel they didn't do their job." He said that "their testimony—that's their day-in, day-out task. They should know what to do in the instances that are presented to them." Asked if they might be mistaken, K.G. said, "Sure." Asked if he would blindly accept their testimony, K.G. said, "No, I wouldn't accept blindly, but I certainly—I value them." Asked if he would apply the same standard for determining their credibility as he would apply to the testimony of "a lay person," K.G. said, "I probably would, yeah." After asking K.G. about his concern over an increase in violent crime, the judge asked if he could sit on a jury and decide the case on the evidence and according to the trial court's instructions, notwithstanding his feelings about violent crime. K.G. replied, "I am sure it would have some weight. I just don't know how much." Asked if he would put that aside, he replied, "I would try to, yes." Asked again, he said, "I certainly could try, yes."

Defense counsel asked K.G. about his friendship with a Minneapolis police detective and how he would feel next time he saw the detective if in the interim he had sat as a juror and found defendant not guilty of a double homicide. K.G. replied, "I guess I would feel disappointment." But he said he did not think he would owe the detective an explanation. The following exchange then occurred concerning K.G.'s view of police officers and their credibility.

Q  Is it fair to say that you have got a rather positive view of law enforcement?

A  Yes. They have always treated me fairly.

Q When do you think you first formulated that positive view?

A It's probably a long time ago.

Q Most of your life?

A Most of my life. I have always felt good about it.

Q Okay. On your questionnaire, you indicated you would favor the testimony of a police officer as opposed to a lay witness by virtue of—do you remember filling that out?

A Mm hmm.

Q That is by virtue of the fact that they're police officers, right?

A Mm hmm.

Q So is it fair to say that you would, because of this long-held feeling, positive feeling you have about police officers, you are more inclined to believe what they tell you from the witness stand than what other people tell you, right?

A I think so, yes.

Q Okay. And this is a feeling that you have had for a long time and strongly have it?

A I guess I didn't know I had it, but—

Q Okay. You told the Judge that you thought that police officers sometimes made mistakes, right?

A Mm hmm, I'm sure everybody does.

Q Do you think they make mistakes less often than other people?

A I have no idea.

Q Okay. Do you think they lie under oath?

A I don't think so.

Q That's inconsistent with, as you described, their job is to bring forth sound evidence?

A Mm hmm.

Q Right?

A Mm hmm.

Q So you would agree with me that police officers, unlike other witnesses, always testify truthfully?

A You know, I don't know. I can't speak for them, but you know, I will hope so.

Q You would be real hard-pressed during the course of this trial to make a conclusion in your mind that a police officer knowingly testified untruthfully?

A Right, I just—I would not feel that he would or she would, whoever is involved with it.

Q Is it—

A It wouldn't be my understanding or—or concern that they would.

Q Would it be fair to say it would be virtually impossible for you to conclude as a juror that a police officer had testified falsely in this case?

A Yes. I think.

Defense counsel then approached the bench and sought to have K.G. removed for cause.

The prosecutor, Fred Karasov, asked for and obtained permission to try to rehabilitate K.G., getting K.G. to admit that it was not inconceivable that some police officer might lie. The prosecutor then asked K.G. a series of leading questions, the answers to which indicated that K.G. would follow the instructions of the court to the best of his ability—that he thought he could be fair.

The following exchange between defense counsel and K.G. then occurred:

Q * * * [P]erhaps you can alleviate some of the confusion I'm now suffering. Because as I understood you, first you said you would favor the testimony of police officers. And then you said—that you told me that due to your positive impression you have of police, it was virtually impossible for you to conclude that a police officer had lied about anything under oath.

And then you told Mr. Karasov that you could—police officers lied just like anybody else and could lie under oath. And you would hold all witnesses to the same standard of judging credibility and wouldn't favor a police officer's testimony just because they're a police officer. Could you clear that up for me, please?

A Well, I think it was in the series of the way the questions were asked. But, you know, I just, you know, my belief is that, you know, based on the question that

was presented in the questionnaire, about police officers, if I hold them in high regard. I mean, I'm not to the point of saying that I would take their testimony or what they say as the number one priority, but I happen to respect their work and what they do.

And, you know, I answered the question as best I could on that because I do feel that I'm going to favor in some way, shape or form what they do because that's how I feel. That's just how I feel. Although, when asked—I would certainly be objective, you know, as best I could.

When defense counsel asked K.G. if in this case he would be more likely to believe the testimony of a police officer over that of defendant, the prosecutor objected and the trial court sustained the objection. The trial court also sustained an objection by the prosecutor to a rephrased question which asked K.G. whether he would be prone to resolve any evidentiary conflict in the case in favor of the police. Asked which he considered the greater travesty of justice, convicting an innocent person or acquitting a guilty person, K.G. replied, "Probably acquitting a guilty one." The trial court then sustained a prosecutor's objection when defense counsel asked K.G. whether, if there was doubt in his mind as to guilt or innocence in this case, he would err on the side of guilt.

Defense counsel repeated his challenge for cause, and the trial court denied the challenge for cause.

Defendant's attorney had already used all of the allowed peremptory challenges. With the illness of one juror and the failure of another to appear, K.G. became a member of the jury which evaluated the conflicting testimony of a Minneapolis police officer and of defendant as to what defendant said during an unrecorded interrogation.

The jury began deliberations late on the afternoon of November 9, 1993. Its deliberations continued on November 10, 11, 12 and 13 before it reached a verdict on the afternoon of November 13.

Minnesota Rule of Criminal Procedure 26.02, subdivision 5 provides, in relevant part, that a juror may be challenged for cause on a number of grounds, including:

1. The existence of a state of mind on the part of the juror, in reference to the case or to either party, which satisfies the court that the juror cannot try the case impartially and without prejudice to the substantial rights of the party challenging.

If a prospective juror during *voir dire* admits to this "state of mind" described in the rule, then the juror should be excused, unless, of course, the prospective juror is "rehabilitated." 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 21.3(c) at 729–30 (1984). Typically rehabilitation takes the form of the prospective juror stating unequivocally that he/she will follow the trial court's instructions and will fairly evaluate the evidence. Moreover, most judges, when faced with such an unequivocal assertion, "will accept the statement at face value (as perhaps the judge must, if he or she is not to make judgments on the juror's personal integrity.)" *Id.* at 730 (quoting Jon Van-Dyke, *Jury Selection Procedures* 146 (1977)).

▮ If the trial court accepts such an assertion and allows the juror to sit, then the question for a reviewing court on appeal is whether the trial court erred in accepting the juror's unequivocal assertion of fairness at face value. As the United States Supreme Court said in *Patton v. Yount*, 467 U.S. 1025, 1036, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984), there are two typical questions of historical fact for a reviewing court in a case like this:

> [D]id [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed.

As a general rule, the trial court's resolution of the question whether the prospective juror's protestation of impartiality is believable is entitled to "special deference" because "the determination is essentially one of credibility, and therefore largely one of demeanor." *Id.* at 1037–38, 104 S.Ct. at 2892, including nn. 12 & 14. Generally, the trial court is free to bear in mind that prospective jurors "may never have been subjected to the type of leading questions and cross-examination

tactics that frequently are employed," and the trial court is free to believe "those statements that were the most fully articulated or that appeared to have been least influenced by leading." *Id.* at 1039, 104 S.Ct. at 2893.

In the instant case the prospective juror in question, K.G., candidly admitted he likely would give greater credence to the testimony of police officers than to the testimony of other witnesses. The prosecutor, in a series of leading questions, got the juror to state that he would "try" to be fair and that to the best of his ability he would follow the instructions given by the trial court. However, given the opportunity by defense counsel to again express himself in his own words, the juror reverted to saying, "I do feel that I'm going to favor in some way, shape or form what they do because that's how I feel. That's just how I feel. Although, when asked—I would certainly be objective, you know, as best I could."

■ On this record we believe that it would have been prudent for the prosecutor to join defense counsel in urging the trial court to excuse the juror for cause. Instead, the experienced prosecutor persisted in asking the trial court to reject the challenge for cause. While we believe trial courts must have considerable discretion in ruling on such challenges, we conclude that the trial court erred in rejecting defense counsel's challenge in this case because the juror did not "swear that he *could* set aside any opinion he might hold and decide the case on the evidence," *id.* at 1036, 104 S.Ct. at 2891, (emphasis supplied), but only that he would *try.*

■ If defendant had then had peremptory challenges available and had not exercised one of them to strike K.G., then the question would be whether defendant could complain about K.G.'s sitting on the jury. Here, however, that is not a problem because defense counsel had already used up all of defendant's peremptory challenges, and the juror in question sat in judgment of defendant.

This leaves the question whether defendant is entitled to a new trial automatically or whether the error is subject to harmless error analysis.

■ Our decision in *State v. Stufflebean,* 329 N.W.2d 314, 317–18 (Minn.1983), suggested that in an appeal based on juror bias, the appellant must show not only that the challenged juror was subject to challenge for cause but also that actual prejudice resulted from the failure to dismiss the juror in response to the defendant's objection. On the record before us we are satisfied that actual prejudice did result from seating K.G. as a juror and that the defendant is, therefore, entitled to a new trial. On the other hand, the United States Supreme Court has stated that when it has been shown that those charged with bringing a defendant to judgment lack objectivity, "a reviewing court can neither indulge a presumption of regularity nor evaluate the resulting harm." *Vasquez v. Hillery,* 474 U.S. 254, 263–64, 106 S.Ct. 617, 623, 88 L.Ed.2d 598 (1986). Accordingly, we agree that if the members of a petit jury are selected on improper criteria or if a biased juror is improperly allowed to sit in judgment of a criminal defendant and the issue is properly raised and preserved, the error has undermined the basic "structural integrity of the criminal tribunal itself, and is not amenable to harmless-error review." *Id.*

Incidentally, our decision is fully supported by a decision cited by neither the state nor the defense on appeal, *United States v. Amerson,* 938 F.2d 116 (8th Cir.1991), *appeal after remand, United States v. Hamell,* 3 F.3d 1187 (8th Cir.1993), *certs. denied,* ——— U.S. ———, 114 S.Ct. 1121, 127 L.Ed.2d 430, ——— U.S. ———, 114 S.Ct. 1123, 127 L.Ed.2d 432 (1994). In *Amerson* a number of prospective jurors indicated that they would give greater credence to testimony of police officers than to testimony of other witnesses. Defense counsel challenged the jurors for cause. The trial court rejected the challenge. The United States Circuit Court of Appeals for the Eighth Circuit reversed and remanded for a new trial, stating:

Faced with a clear showing of actual partiality for police testimony on the part of the challenged jurors, the district court abused its discretion by refusing to excuse those jurors for cause. Although the district court has substantial discretion in conducting *voir dire,* the exercise of that discretion is subject to "the essential demands of fairness." When, as here, a case

turns on the credibility of law enforcement officers, the district court has a responsibility to ensure the jurors are not predisposed to believe the testimony of the officers is inherently more credible than that of other witnesses. Indeed, a defendant cannot receive a fair trial at the hands of jurors "who [are] inclined to give unqualified credence to law enforcement officer[s] simply because [they are] officer[s]." When jurors express this kind of bias, the district court must either "excuse [the jurors] for cause, or by instructions and additional questions convince the [jurors] that there is no special credence due the testimony of [police] officer[s]." * * * By doing neither, the district court failed to "fulfill [its] duty to remove prospective jurors who [would] not be able to follow impartially the court's instructions and evaluate the evidence," and thus committed reversible error.

938 F.2d at 118 (citations omitted).

■ Because we reverse and remand for a new trial, we will briefly address issues raised by defendant on appeal that may arise on retrial. (1) On remand, the state shall renew good faith, diligent efforts to obtain files of the Bureau of Alcohol, Tobacco and Firearms relating to its investigation of Darren Hardway and Betty Cole, so that the trial court may examine the files *in camera* to see if they contain any impeachment evidence. *Cf., State v. Paradee*, 403 N.W.2d 640 (Minn.1987). (2) The prosecutor is directed not to engage again in the kind of improper cross-examination of defendant that the state's attorney on appeal conceded was improper. *See State v. Sutherlin*, 396 N.W.2d 238, 241 (Minn.1986). *Cf., State v. Salitros*, 499 N.W.2d 815 (Minn.1993). (3) On retrial the trial court is instructed to inform the jury that the failure of the police to tape record parts of the interrogation of defendant may be considered in evaluating the testimony of the officer as to what defendant said. *Cf., State v. Scales*, 518 N.W.2d 587 (Minn.1994), *reh'g denied* (Aug. 10, 1994).

Reversed and remanded for new trial.

ANDERSON, Justice (dissenting).

I respectfully dissent from the majority's conclusion that the trial court erred in rejecting the request of defense counsel to remove juror K.G. for cause.

To prevail on an appeal based on juror bias, the defendant must show that the challenged juror was subject to challenge for cause. *State v. Stufflebean*, 329 N.W.2d 314, 317 (Minn.1983). As the majority notes, a juror may be challenged for cause, inter alia, on the ground that there exists "a state of mind on the part of the juror, in reference to the case or to either party, which satisfies the court that the juror cannot try the case impartially and without prejudice to the substantial rights of the party challenging." Minn.R.Crim.P. 26.02, subd. 5(1).

This court has held that "[t]he test for the impartial juror is * * * [whether] he 'can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" *State v. Andrews*, 282 Minn. 386, 394, 165 N.W.2d 528, 534 (1969) (quoting *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751 (1961)). Because the trial judge is in the best position to observe and to evaluate the demeanor of the prospective juror, the judge should be given broad discretion in determining whether to remove a prospective juror for cause. *See State v. Graham*, 371 N.W.2d 204, 206 (Minn. 1985). This court will not lightly conclude the trial court abused its discretion if the juror indicates his or her "intention to set aside any preconceived notions, and demonstrate[s] to the satisfaction of the trial judge that [he or she is] able to do so." *State v. Howard*, 324 N.W.2d 216, 220 (Minn.1982), *cert. denied* 459 U.S. 1172, 103 S.Ct. 818, 74 L.Ed.2d 1016 (1983).

During voir dire, juror K.G. was first interviewed by the trial judge. The judge asked K.G. to expand on his response to question 34 of the jury questionnaire, which indicated that he might favor police testimony over the testimony of other witnesses. K.G. first agreed with the judge that police officers do make mistakes. He also indicated that he would not blindly accept the testimony of police officers. The judge then asked K.G. whether, in determining the credibility of and

the weight to be given to the testimony of police officers, K.G. would apply the same standard that he would be instructed to apply to other witnesses. K.G. responded that he "probably would." Finally, when the judge asked K.G. if in fulfilling his duty as a juror he could put aside any biases or prejudice that he might harbor, K.G. replied "I certainly could try, yes."

Defense counsel next questioned juror K.G., and the majority opinion details this line of questioning at length. Defense counsel's final question, which was a leading question that came at the end of a series of leading questions, was as follows: "Would it be fair to say it would be virtually impossible for you to conclude as a juror that a police officer had testified falsely in this case?" K.G. responded, "Yes, I think." Defense counsel then asked the trial judge to remove K.G. for cause.

Before ruling on defense counsel's challenge, the trial judge granted the prosecutor an opportunity to rehabilitate K.G. When the prosecutor asked K.G. whether police officers do in fact lie, K.G. responded, "I don't think I would have any doubt that somebody would lie, no matter who they are." Next, when asked whether he would determine the credibility of police officers in the same way that he would determine the credibility of other witnesses, K.G. responded "Yes. I certainly would, yes." K.G. also indicated that he would have no difficulty in following the trial judge's instructions and that he would initially treat all witnesses the same and would presume nothing about their credibility before they testified. In response to an inquiry by the prosecutor, K.G. agreed that he is "basically trusting of people" and that until he had reason to believe otherwise, he would assume that any person coming into court would be telling the truth.

Defense counsel was then given another opportunity to question K.G. Defense counsel asked K.G. to clarify whether he would favor the testimony of police officers over that of other witnesses. K.G. responded by stating that he would not accept the testimony of police officers "as the number one priority"; he simply "respect[s] their work and what they do." K.G. then indicated rath-er vaguely that he "would favor in some way, shape or form what [the police] do because that's how I feel." But, it is critical to the analysis of this case to recognize that K.G. continued his answer by stating that "[a]lthough, when asked—I would certainly be objective, you know, as best I could * * * [g]iven the instructions given to me I guess from the Judge."

Other courts have held that a juror who harbors a bias or prejudice may nonetheless sit as an impartial juror if he or she expresses a willingness to try to be objective. For example, in *United States v. Jones,* the defendant was charged with conspiracy to distribute cocaine. 865 F.2d 188, 189 (8th Cir. 1989). During voir dire, the trial court refused to strike a juror for cause who had expressed strong antidrug feelings. The defendant was convicted, and the Eighth Circuit Court of Appeals affirmed. The court of appeals held that the trial court did not abuse its broad discretion in refusing to strike the juror for cause because, although the juror was not sure if her strong antidrug feelings would influence the way in which she viewed the evidence, she indicated that she would do her best to base her decision on the evidence. *Id.* at 190.

Under the facts of the present case, I cannot conclude that the trial court abused its broad discretion by refusing to remove juror K.G. for cause. At worst, some of K.G.'s answers to voir dire questions were vague. A close review of the record, however, reveals that, on the whole, K.G. indicated he would do his best to set aside his impressions and opinions. Although K.G. acknowledged that he in some way favors what the police do, he also clearly indicated during questioning by the trial judge, the prosecutor and defense counsel that he would be objective and would, to the best of his ability, follow the court's instructions. *See Andrews,* 282 Minn. at 394, 165 N.W.2d at 534. The trial judge was in the best position to view the demeanor of K.G. and to determine whether K.G. would set aside his impressions and opinions and follow the court's instructions.

Furthermore, I consider the majority's reliance on *United States v. Amerson,* 938 F.2d

116 (8th Cir.1991), to be misplaced. In *Amerson*, while police officers attempted to stop an automobile, three guns were allegedly thrown from the moving vehicle. *Id.* at 117. Officers arrested the driver and two passengers, charging each of them with possession of a firearm by a felon. *Id.* Before the three defendants' joint trial, during voir dire, five prospective jurors clearly stated that they would favor police testimony over the testimony of other witnesses. *Id.* at 117–18. The trial court removed only one of the prospective jurors for cause on other grounds. *Id.* at 118. At trial, defense witnesses directly contradicted police testimony by testifying that they did not see any guns thrown from the vehicle. The jury convicted all three defendants. *Id.* at 117. On appeal to the Eighth Circuit Court of Appeals, the defendants argued that the trial court committed reversible error by failing to strike the four jurors for cause. The court of appeals agreed, reversed the defendants' convictions and ordered a new trial. *Id.* at 118.

In *Amerson*, the court of appeals first noted that the government had acknowledged that its case against the defendants turned entirely on police testimony, "pitting police testimony against that of the defense witnesses." 938 F.2d at 117. The court then stated that "[f]aced with a *clear showing* of actual partiality for police testimony on the part of the challenged jurors, the district court abused its discretion by refusing to excuse the jurors for cause." *Id.* at 118 (emphasis added). The court continued by stating that when the government's case depends on the credibility of police officers, the trial court must ensure that jurors are not "predisposed to believe that testimony of police officers is inherently more credible than that of other witnesses." *Id.* Most importantly, the court stated that "[w]hen jurors express this kind of bias, the district court must either 'excuse [the jurors] for cause, or by instructions and additional questions convince the [jurors] that there is no special credence due the testimony of [police officers].'" *Id.* (quotation alteration in original) (quoting *United States v. Evans,* 917 F.2d 800, 806 (4th Cir.1990)). The court reversed the defendants' convictions because the trial judge failed to give the jury any instructions

and failed to use any additional questions to "convince" the jurors that they should not automatically give the testimony of police officers greater credence than that of other witnesses. *Id.*

The facts of the present case are clearly distinguishable from those in *Amerson.* First, although K.G. acknowledged that he "would favor in some way, shape or form what [the police] do," unlike the jurors in *Amerson,* K.G.'s responses did not clearly show that he would favor police testimony over the testimony of other witnesses. Indeed, K.G. stated that he would be objective and that he would do his best to follow the court's instructions. Second, the testimony of police officers was not the state's principal evidence against the defendant, and their testimony was in large part cumulative. The state presented several witnesses who were not involved in law enforcement and whose testimony indicated that the defendant freely participated in the robbery and in the murders. Third, during voir dire, the trial judge instructed K.G. that he should use the same standards to determine the credibility of police officers as that of other witnesses, and K.G. indicated that he would be willing to do so. Moreover, at the beginning of and at the close of trial, the judge gave the jury detailed instructions with respect to how they were to assess the credibility of witnesses who testified before the court. These facts clearly distinguish the present case from *Amerson.*

For the foregoing reasons, I dissent.

TOMLJANOVICH, Justice (dissenting).

I join in the dissent of Justice Anderson.

STRINGER, Justice (dissenting).

I join in the dissent of Justice Anderson.