**STATE of Minnesota, Respondent,**

v.

**Rebecca Marie COLEMAN, Appellant.**

**No. CX–96–943.**

Court of Appeals of Minnesota.

March 11, 1997.

718

Hubert H. Humphrey, III, Attorney General, Catherine M. Keane, Assistant Attorney General, St. Paul, for Respondent.

Joseph A. Evans, Becker County Attorney, Detroit Lakes, for Respondent.

John M. Stuart, State Public Defender, Scott G. Swanson, Assistant Public Defender, Minneapolis, for Appellant.

Rebecca Marie Coleman, Shakopee, Pro Se.

Considered and decided by SHORT, P.J., and AMUNDSON and HARTEN, JJ.

## OPINION

HARTEN, Judge.

Appellant Rebecca Coleman appeals her conviction for second-degree felony murder, arguing that the district court erroneously refused to suppress a custodial statement taken in violation of the *Scales* recording mandate. Appellant also argues that the prosecutor's closing argument, delivered without objection, constituted plain error requiring a new trial and that the evidence was insufficient to support the verdict. We affirm.

## FACTS

Appellant was convicted of second-degree felony murder for the stabbing death of her boyfriend, Robert Basswood. On the night of December 10, 1994, appellant and Basswood celebrated his birthday with friends and family at their Ponsford home. At one point during the evening, several guests went outside to change a car tire. Four people remained inside the house: appellant; Basswood; Basswood's sister, Rhonda Basswood; and a friend, Vince Kettle. Rhonda Basswood and Kettle testified that, while they sat at the kitchen table, appellant took a knife from the kitchen and walked toward the bathroom. Kettle testified that a few minutes later he saw appellant holding the knife at her side while talking with Basswood in the hallway outside the bathroom.

Rhonda Basswood testified that a short time later her brother walked toward the kitchen area and said, "That bitch. * * * She stabbed me." She further testified that when her brother collapsed on the floor, she and Kettle were seated at the kitchen table, and appellant was crying in the bathroom,

with the door shut. A law enforcement officer later found a knife behind the toilet, which Rhonda Basswood identified as the knife appellant took from the kitchen. Appellant was taken into custody.

Appellant provided four in-custody statements to Becker County Chief Deputy Sheriff John Sieling. At 12:45 a.m. on December 11, appellant waived her *Miranda* rights and gave a tape-recorded statement. After the interrogation, Sieling informed appellant that Basswood had died and arrested appellant for causing Basswood's death. At 3:07 a.m., Sieling undertook a second tape-recorded interrogation. Later that afternoon, when Sieling attempted to document injuries to appellant's hands, appellant explained that she had retained counsel. Appellant then volunteered a third statement. On the morning of December 13, appellant provided a fourth in-custody statement to Sieling. Appellant's third and fourth statements were not tape-recorded.

Appellant was charged with second-degree murder. At the omnibus hearing, the district court held that the first three statements were admissible;[1] the state agreed not to use the fourth statement in its case-in-chief. After appellant renewed her motion to suppress the fourth statement, the district court ordered that the state could use the fourth statement, but only for impeachment purposes.

At trial, the state's medical expert testified that Basswood died from a single knife wound and that the injuries to appellant's hands were consistent with offensive-type wounds from an unguarded knife. Rhonda Basswood testified that she did not notice any wounds on appellant's hands earlier in the evening when they played cards. On cross-examination, appellant's medical expert admitted that appellant's hand wounds could have been caused by an unguarded knife.

The prosecution offered the recordings of appellant's first two custodial statements. In the first statement, appellant said that Basswood appeared fine when she passed him in the hallway outside the bathroom. Appellant

1. The district court ruled the third statement admissible because it was voluntary and not in response to police interrogation. The first three statements are not at issue in this appeal.

stated that she was in the bathroom alone, and when she returned to the living room, Basswood was lying on the floor having difficulty breathing. Appellant speculated that the person who stabbed Basswood must have been in one of the bedrooms, but it could not have been Kettle, Rhonda Basswood, or herself. Appellant said that she and Basswood were getting along fine and that she never had a knife in her hand that evening.

In her second statement, appellant said that she and Basswood were arguing in the bathroom. Basswood had intended to leave his birthday party, and appellant told him that he was not going out by himself anymore (a few nights prior to the party, Basswood had come home late, with a "hickey" on his neck). While she sat on the toilet, Basswood held the knife in front of her. Appellant grabbed at the knife, causing the wounds to her hands. When appellant pushed Basswood's arm away from her, Basswood stabbed himself. Appellant stated that Basswood left the bathroom, followed by appellant moments later, at which point Basswood was already on the living room floor.

Barbara LaChapelle, a Becker County jail inmate, testified that appellant told her that she remembered leaving the bathroom, going back to the kitchen, grabbing a knife, and returning to the bathroom.

At trial, appellant testified that she did not remember the circumstances surrounding Basswood's death or how she sustained cuts to her hands. Appellant said that after Basswood was taken to the hospital, Kettle repeatedly told her, "it was an accident." Appellant testified that between the time that she gave her first and second custodial statements, Sieling suggested that she assert self-defense, and for this reason she simply agreed with his questions during the second interrogation. As to the fourth statement, appellant testified that she was crying and never responded to any questions. On cross-examination, the state questioned appellant about the fourth statement. As part of the state's rebuttal, Sieling testified that during her fourth statement appellant admitted that she stabbed Basswood, having been angry about his infidelity.

The jury acquitted appellant of the second-degree intentional murder charge, but found her guilty of the lesser included offense of second-degree felony murder. The district court sentenced appellant to serve 150 months.

## ISSUES

1. Did the district court erroneously allow the prosecution to use appellant's unrecorded custodial statement to impeach her inconsistent trial testimony?

2. Is appellant entitled to a new trial because of prosecutorial misconduct in closing argument?

3. Does the evidence support the jury's verdict finding appellant guilty of second-degree felony murder?

## ANALYSIS

1. All custodial interrogation "must be recorded when questioning occurs at a place of detention" or else any custodial statements "may be suppressed at trial." *State v. Scales*, 518 N.W.2d 587, 592 (Minn. 1994). The supreme court adopted this rule in exercise of its supervisory power to insure the fair administration of justice. *Id.* In the instant case, the district court ruled that appellant's unrecorded fourth custodial statement, taken after appellant consulted with an attorney, could be used only for impeachment purposes. Appellant urges that the statement should have been suppressed because it was a "substantial" violation of the recording requirement. *See id.* (suppression required if violation deemed "substantial"). We disagree.

A statement taken in violation of *Miranda* may not be used in the prosecution's case-in-chief, but may be used to impeach the defendant's conflicting trial testimony. *Harris v. New York*, 401 U.S. 222, 224–26, 91 S.Ct. 643, 645–46, 28 L.Ed.2d 1 (1971); *see also State v. Slowinski*, 450 N.W.2d 107, 111 (Minn.1990). Similarly, a statement taken in violation of a defendant's Sixth Amendment right to counsel may be used to impeach the defendant's inconsistent trial testimony, even though it cannot be used in the prosecution's case-in-chief.

*Michigan v. Harvey,* 494 U.S. 344, 350–51, 110 S.Ct. 1176, 1180–81, 108 L.Ed.2d 293 (1990).

The state argues that the rationale for allowing the prosecution to impeach a defendant with a statement taken in violation of *Miranda* or the Sixth Amendment right to counsel likewise applies to violations of the *Scales* recording requirement. As the United States Supreme Court persuasively explained:

> We have never prevented use by the prosecution of relevant voluntary statements by a defendant, particularly when the violations alleged by a defendant relate only to procedural safeguards that are "not themselves rights protected by the Constitution," but are instead measures designed to ensure that constitutional rights are protected.

*Harvey,* 494 U.S. at 351, 110 S.Ct. at 1181 (quoting *Michigan v. Tucker,* 417 U.S. 433, 444, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974)). We hold that a custodial statement taken in violation of *Scales* may be used to impeach a defendant's inconsistent trial testimony even though it cannot be used in the prosecution's case-in-chief.

■ Appellant further argues that by repeatedly referring to the statement as a "confession" during closing argument, the prosecutor used the statement as substantive evidence of appellant's guilt rather than simply to attack her credibility. An admission by a party, however, is received as substantive evidence of the facts admitted and not merely as impeachment evidence. 2 Charles T. McCormick, *McCormick on Evidence* § 254, at 141 (John William Strong et al. eds., 4th ed. 1992). Thus, in a criminal trial, evidence of any statement made by the defendant may be considered by the jury for all purposes—not just for the purpose of testing credibility and weight. 10 *Minnesota Practice,* CRIMJIG 3.15 (1990). At trial, defense counsel was aware of the court's intention to instruct the jury in accordance with this rule. Once appellant testified in her own defense, and the state introduced evidence of her fourth statement, in closing argument the prosecutor could legitimately characterize her statement as a confession.

■ Finally, citing *State v. Logan,* 535 N.W.2d 320 (Minn.1995), appellant argues that the district court erred by not instructing the jury that Sieling's failure to record the fourth statement may be considered in evaluating his testimony as to what appellant said. In *Logan,* the supreme court reversed and remanded for a new trial, directing the trial court to instruct the jury that the failure of the police to tape-record parts of the interrogation of the defendant may be considered in evaluating the officer's testimony as to what the defendant said. *Id.* at 325. Appellant cites no authority in *Scales* or elsewhere for the application of this rule in the instant case. The jury was generally instructed that it was to determine the weight and credibility of all the evidence.

■ 2. Appellant argues that the prosecutor committed prejudicial misconduct in closing argument. The prosecutor characterized appellant as "shopping around for a defense" and deliberately attempting to "mislead" the jury. These comments constitute misconduct because they divert the jury's attention from its fundamental role of deciding whether the state has met its burden of proving the defendant guilty beyond a reasonable doubt. *See State v. Salitros,* 499 N.W.2d 815, 819 (Minn.1993) (quoting *State v. Montjoy,* 366 N.W.2d 103, 109 (Minn. 1985)). Moreover, the supreme court has held that prosecutors are not free to belittle a particular defense in the abstract. *State v. Williams,* 525 N.W.2d 538, 549 (Minn.1994); *Salitros,* 499 N.W.2d at 818. The "shopping around" comment is similar to the "that's the sort of defense that defendants raise when nothing else will work" argument declared improper by the supreme court. *See Williams,* 525 N.W.2d at 549; *Salitros,* 499 N.W.2d at 818; *State v. Bettin,* 309 Minn. 578, 579, 244 N.W.2d 652, 654 (1976).

■ We apply a two-tier test when deciding whether prosecutorial misconduct was harmless. *State v. Washington,* 521 N.W.2d 35, 40 (Minn.1994) (citing *State v. Boitnott,* 443 N.W.2d 527, 534 (Minn.1989)). Where the misconduct is "unusually serious," an affirmance of the conviction requires certainty beyond a reasonable doubt that the error

was harmless. *State v. Caron,* 300 Minn. 123, 128, 218 N.W.2d 197, 200 (1974). In cases involving less serious misconduct, the test is whether the misconduct played a substantial part in influencing the jury to convict. *Id.* We first analyze the prosecutor's comments under the stricter of the two standards.

■ Appellant did not object to these comments at trial, which suggests she did not consider them prejudicial. *See State v. Ture,* 353 N.W.2d 502, 516 (Minn.1984) (failure to object to prosecutor's statements in closing argument suggests defendant did not consider them prejudicial). The district court diminished the effect of the comments by instructing the jury that "the arguments or other remarks of an attorney are not evidence in this case" and that jurors "should not permit bias, prejudice, or sympathy to affect [their] judgment." *See State v. Hawkins,* 511 N.W.2d 9, 13 (Minn.1994) (court's instructions "lessened the impact of the improper comments").

Examining the prosecutor's closing argument as a whole, we note that the prosecutor's comments at issue are found on two pages of an argument covering 65 pages of the transcript. The prosecutor warned the jury to remain impartial during deliberations and not to be swayed by sympathy. A review of the evidence strongly points to appellant's guilt. Moreover, the jury's acquittal of appellant for second-degree intentional murder indicates that "members of the jury were not unduly inflamed by the prosecutor's comments." *See State v. DeWald,* 463 N.W.2d 741, 745 (Minn.1990). We conclude that under the more strict standard the misconduct was harmless beyond a reasonable doubt and as a whole provides no basis for reversal. Accordingly, we need not analyze under the less strict standard.

■ 3. Appellant makes a pro se challenge to the sufficiency of the evidence. We must determine whether, given the evidence and any legitimate inferences that can be drawn from it, a jury could reasonably find the defendant guilty of the charged offense. *State v. Pierson,* 530 N.W.2d 784, 787 (Minn. 1995). A guilty verdict will not be disturbed if the jury, giving due regard to the pre-

sumption of innocence and to the state's burden of proof beyond a reasonable doubt, reasonably could have found the defendant guilty. *Id.*

■ Consideration of a sufficiency of the evidence challenge warrants stricter scrutiny where the evidence is circumstantial. *State v. Bias,* 419 N.W.2d 480, 484 (Minn. 1988). Nevertheless, a jury is in the best position to evaluate circumstantial evidence, and its verdict must be given due deference. *Id.; State v. Anderson,* 379 N.W.2d 70, 75 (Minn.1985), *cert. denied,* 476 U.S. 1141, 106 S.Ct. 2248, 90 L.Ed.2d 694 (1986); *State v. Orfi,* 511 N.W.2d 464, 471 (Minn.App.1994), *review denied* (Minn. Mar. 15, 1994). In cases involving circumstantial evidence, "[a]s in all cases, the jury determines the credibility and weight given to the testimony of individual witnesses." *Bias,* 419 N.W.2d at 484 (citing *State v. Daniels,* 361 N.W.2d 819, 826 (Minn.1985)).

> [A] conviction based on circumstantial evidence will be upheld and such evidence is entitled to as much weight as any other kind of evidence, so long as a detailed review of the record indicates that the reasonable inferences from such evidence are consistent only with the defendant's guilt and inconsistent with any rational hypothesis except that of guilt. Inconsistencies in the state's case or possibilities of innocence do not require reversal of a jury verdict so long as the evidence taken as a whole makes such theories seem unreasonable. Thus, to succeed in a challenge to a verdict based on circumstantial evidence, a convicted person must point to evidence in the record that is consistent with a rational theory other than guilt.

*State v. Ostrem,* 535 N.W.2d 916, 923 (Minn. 1995) (citations omitted).

In support of her claim, appellant alleges general inconsistencies in the statements of various witnesses (specifically, Kettle and Rhonda Basswood) before and at trial. She notes that, despite the wounds to her hands, her blood was not found on the victim. She argues that the wounds to her hands were not wounds from an unguarded knife, but instead were caused by broken glass earlier

in the day. She asserts that a shorter person must have inflicted the lethal blow and that she did not have the strength to drive a knife over seven inches deep into Basswood's chest. She claims that she could not have overpowered Basswood, who outweighed her by 80 pounds. Finally, appellant criticizes the police investigation.

Notwithstanding appellant's assertions, careful examination of the entire record leads us to conclude that the reasonable inferences from the circumstantial evidence are consistent only with appellant's guilt and are inconsistent with any rational hypothesis except that of guilt. Giving due regard to the presumption of innocence and the state's burden of proof beyond a reasonable doubt, the jury reasonably could have found appellant guilty of second-degree felony murder.

## DECISION

Appellant's statement, taken in violation of the *Scales* recording requirement, was properly admitted to impeach her inconsistent trial testimony. The prosecutor's improper statements during closing argument do not warrant a new trial. The evidence supported the jury's verdict finding appellant guilty of second-degree felony murder.

**Affirmed.**