**STATE of Minnesota, Respondent,**

v.

**Roger William ENGHOLM, Appellant.**

**STATE of Minnesota, Respondent,**

v.

**Marlin Fred ENGHOLM, Appellant.**

**Nos. 49443, 49459.**

Supreme Court of Minnesota.

March 28, 1980.

C. Paul Jones, Public Defender, Michael Cromett and Marguerite McCarron, Asst. Public Defenders, Minneapolis, for appellants.

Warren Spannaus, Atty. Gen., Gary Hansen and Barbara Gill, Sp. Asst. Attys. Gen., St. Paul, Stephen C. Rathke, County Atty., Brainerd, for respondents.

Heard before OTIS, YETKA, and SCOTT, JJ., and considered and decided by the court en banc.

## OPINION

SCOTT, Justice.

This is a joint appeal by two brothers, Roger and Marlin Engholm, from convictions of obstructing legal process with force or violence and simple assault. Their cases were consolidated for trial with those of three other defendants arising from the same incident: Albert Engholm, Linda Engholm, and Daniel Johnson. The cases were tried to a jury of the Ninth Judicial District. The jury found Roger and Marlin Engholm guilty on both counts, and acquitted the other three defendants. Roger and Marlin were each sentenced to one year in jail and fined $500, with execution of the sentence stayed two years, and were also placed on supervised probation for two years, with the first six months to be served in Crow Wing County Jail. We affirm.

On May 28, 1978, at approximately 12:30 a. m., Roger and Marlin left their father's house in Brainerd and went to a local bar to play pool. They were joined by Daniel Johnson, a friend of theirs. At 1:15 a. m., the three left the bar in Roger's car, with Roger driving, to return to the Engholm home. Shortly thereafter, their car passed through the intersection of Washington and Eighth Streets in downtown Brainerd.

Officer Merriman and Reserve Officer Hines of the Brainerd Police Department were controlling traffic at the intersection of Washington and Eighth Streets at this time because two ambulances were about to pass through the intersection. While Merriman and Hines were waiting for the ambulances, Merriman's attention was drawn to defendants' car because it was traveling at 15 to 20 miles per hour in a 30-miles-per-hour speed zone and was weaving back and forth within its lane. Merriman suspected that the driver of the car was under the influence of alcohol, and continued to observe the car after it passed through the intersection and noted its license number. After the ambulances had passed through the intersection, Merriman and Hines got into their squad car and proceeded east on Washington, following defendants' car. The traffic was moderately heavy and Mer-

riman was unable to get directly behind defendants' car. He was able to observe the car, however, and testified that it continued to be driven slowly and was weaving somewhat within its own lane. Defendants' car turned left at First Avenue N. E. and Merriman followed it. It was only at this time that Hines asked and was told what car they were following and why.

On First Avenue, the squad car was directly behind defendants' car and, according to Merriman and Hines, their red warning lights were on to signal to defendants' car to stop. Defendants did not stop but instead proceeded one block on First Avenue and turned right onto B Street. Roger Engholm stopped his car on B Street in front of the Engholm residence. The squad car pulled up behind defendants' car. Roger got out of his car and walked between the two cars toward his house. Roger was aware of the squad car but paid no attention to it. Merriman radioed his location to the police department and got out of the squad car. He called to Roger, telling him to stop because he wanted to speak to him. Roger began running toward the back of the house. Merriman caught up with him about twenty feet from the back door and grabbed him by the arm. Roger jerked away from Merriman and told him to keep his hands off. Merriman grabbed him again at the door.

Meanwhile, Hines had gotten out of the squad car and Marlin Engholm and Daniel Johnson had gotten out of Roger's car. Hines told them to say by the car, but they ran toward Roger and Merriman. Merriman testified that he was struck from behind by Marlin. Hines and Merriman managed to handcuff Marlin, but Roger escaped into the house. Shortly thereafter, defendants' father, Albert Engholm, and sister, Linda Engholm, appeared from the house. According to Merriman, Roger also reappeared and helped Marlin escape from the officers into the house by struggling with Merriman again. Merriman also testified that Linda Engholm and Daniel Johnson pulled his hair to help Roger. Ultimately, the Engholms all entered their house. Dan-

iel Johnson was handcuffed by the officers. Albert Engholm told the officers to "get the _ _ _ _ off" his yard, and Roger Engholm also told them to get out and threatened to "get a gun and blow your _ _ _ _ _ _ _ head off." The officers radioed for reinforcements and were joined by several squad cars. They left later that morning after removing Marlin's handcuffs. Only Daniel Johnson was taken to the police station.

The following issues are presented to us:

(1) Was the evidence presented at trial sufficient to support defendants' convictions of obstructing legal process?

(2) Does Minn.Stat. § 609.50 (1978) violate defendants' constitutional rights to equal protection or due process of law?

1. Defendants were convicted of obstructing legal process under Minn.Stat. § 609.50(1), which provides:

Whoever intentionally obstructs, hinders or prevents the lawful execution of any legal process, civil or criminal, or apprehension of another on a charge or conviction of a criminal offense or interferes with a peace officer while the officer is engaged in the performance of his official duties may be sentenced as follows:

(1) If the act was accompanied by force or violence or the threat thereof, to imprisonment for not more than one year or to payment of a fine of not more than $1,000, or both;

Defendants claim that the evidence introduced at trial was legally insufficient to support their jury convictions. They argue that the evidence does not demonstrate that the officers had a right to stop defendants. Because the officers' attempt to stop defendants was unlawful, defendants argue, they were justified in resisting the officers' actions.

To lawfully stop a person for questioning, as distinct from making an arrest, a police officer must be able to point to specific and articulable facts which, together with reasonable inferences from those facts, reasonably warrant the invasion of a citizen's personal security. The intrusion cannot be based on an inarticulate hunch, and must be reasonable in light of the particular circumstances. A police officer may approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). In *State v. Johnson,* 257 N.W.2d 308 (Minn.1977), this court held that a police officer's stopping of an automobile was not justified because the officer could not articulate any reasons for being suspicious of defendant's automobile. The court quoted a statement by the New York court in *People v. Ingle,* 36 N.Y.2d 413, 420, 369 N.Y.S.2d 67, 74, 330 N.E.2d 39, 44 (1975):

It should be emphasized that the factual basis required to support a stop for a "routine traffic check" is minimal. An actual violation of the Vehicle and Traffic Law need not be detectable * * *. All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion."

257 N.W.2d at 309. This passage was also quoted with approval in *State v. McKinley,* 305 Minn. 297, 232 N.W.2d 906 (1975). The necessity of having a reasonable suspicion of a violation before stopping an automobile was recently reaffirmed by the United States Supreme Court in *Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979):

[W]e hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

██ Since no actual traffic laws were broken up to the time of the attempted stop and therefore no probable cause existed for the arrest of the driver, the salient issue that emerges is whether "specific and articulable facts which, taken together with rational inferences from those facts," reasonably warranted the attempted stop as pronounced in *Terry*. More simply, did Officer Merriman have specific and articulable reasons to suspect that driver Roger Engholm was under the influence of some intoxicant based on the observation of his driving. If so, the officer had a right to stop him to make the determining observations.

██ The evidence in the instant case is more than sufficient to support a finding that the officers acted lawfully when they attempted to stop defendants. Merriman's attention was caught by defendant's vehicle while he was directing traffic because the vehicle was proceeding at an exceptionally slow speed and was weaving within its lane. Defendant's car continued weaving and proceeding at a slow speed while the officers followed it in their squad car. Merriman was a regular full-time police officer who had been working the midnight-to-eight a. m. shift for approximately one year and had occasion to observe people driving under the influence of alcohol almost every night. The bars in Brainerd had closed for a Saturday night shortly before Merriman first observed defendant's car. The Engholms and Merriman were not acquainted. Although the defendants dispute some of Merriman's observations, it is well-settled in Minnesota that it is the province of the jury to determine the credibility and weight to be given to the testimony of any individual witness. *State v. Reichenberger,* 289 Minn. 75, 182 N.W.2d 692 (1970); *State v. Brehmer,* 281 Minn. 156, 160 N.W.2d 669 (1968); *State v. Keezer,* 274 Minn. 292, 143 N.W.2d 627, *cert. denied,* 385 U.S. 896, 87 S.Ct. 216, 17 L.Ed.2d 141 (1966).

Defendants also claim that even if their resistance to the officers was unlawful because the officers' actions were in the course of their official duties, the evidence is insufficient to support the jury's finding that defendants' acts were accompanied by "force or violence or the threat thereof," and thus punishable under subsection 1 of § 609.50.

██ The trial court's instructions to the jury informed them that "force or violence or the threat thereof" as used in § 609.50(1) was to be construed according to common usage. These words are not defined in the statute, and, absent statutory definition, words are to be construed according to their common and approved usage. *Otis Lodge, Inc. v. Commissioner of Taxation,* 295 Minn. 80, 206 N.W.2d 3 (1972). The evidence most favorable to the state in the instant case indicates that Roger Engholm jerked away from Merriman's grasp, telling Merriman to keep his "_____ hands off" him; that Marlin Engholm grabbed Merriman from behind while Merriman was struggling with Roger; that Roger in turn grappled with the officers to help Marlin escape; and that Roger yelled at the officers to "get the ____ out of here. I am going to get a gun and blow your _____ head off." From this evidence, the jury could reasonably have found that Roger and Marlin acted with "force or violence or the threat thereof."

██ 2. Defendants raise the issue of the constitutionality of § 609.50 for the first time on appeal. The law is clear in Minnesota that the constitutionality of a statute cannot be challenged for the first time on appeal. *Hampton v. Hampton,* 303 Minn. 500, 229 N.W.2d 139 (1975); *Automotive Merchandise, Inc. v. Smith,* 297 Minn. 475, 212 N.W.2d 678 (1973); *Ukkonen v. City of Minneapolis,* 280 Minn. 494, 160 N.W.2d 249 (1968). This rule should dispose of defendants' constitutional claims.

██ In addition, defendants' argument that § 609.50 is unconstitutional is frivolous. The thrust of their argument is that the statute does not contain standards which reasonably indicate whether an individual will be charged with a misdemeanor (under subsection 2) or a gross misdemeanor (under subsection 1). Defendants argue that the distinguishing phrase of subsection 1,

"[with] force or violence or the threat thereof" does not sufficiently justify the difference in penalties between the two sections and is overly broad and vague.[1] They assert that the statute permits similarly-situated individuals to be treated differently and therefore violates the equal protection clause. Defendants also claim that the statute denies them due process of law because it fails to establish meaningful standards to guard against arbitrary and capricious application of the two sections. Thus, the prosecutor is given "unbridled and unfettered discretion" in determining whether to charge an individual with a gross or simple misdemeanor.

Defendants' arguments ignore the marked distinction between acts committed with force, violence, or threats and nonviolent acts which permeates statutory law and the common law. The lack of a statutory definition for these words does not mean that the application of this distinction is standardless; rather, the words have such a distinct and common usage that they require no further definition, as noted by the trial court. The prosecutor is given no more discretion to determine what crime is to be charged under this statute than under any other statute, and the constitutionality of prosecutorial discretion in general is well-established. *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *Newman v. United States,* 127 U.S. App.D.C. 263, 382 F.2d 479 (D.C.Cir.1967); *State v. Andrews,* 282 Minn. 386, 165 N.W.2d 528 (1969). Certainly in this case, as discussed above, there is ample evidence of defendants' use of force, violence, or the threat thereof.

We therefore affirm the trial court for the reasons discussed above.

Affirmed.

---

1. Minn.Stat. § 609.50(2) provides:
   In other cases to imprisonment for not more than 90 days or to payment of a fine of not more than $300, or both.