# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2484

_____

| | | |
|---|---|---|
| Richard Joseph Jacobson, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Dan Mott, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: May 13, 2010
Filed: October 15, 2010

_____

Before WOLLMAN, SMITH, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Richard Jacobson was arrested and detained by Deputy Sheriff Dan Mott for obstructing legal process with force, in violation of Minnesota Statute section 609.50. Jacobson sued Mott under 42 U.S.C. § 1983, claiming that Mott violated his rights under the First, Fourth, and Fourteenth Amendments by arresting and detaining him without probable cause, and by fabricating charges against him so that he would be held in jail over the weekend. The district court[1] granted Mott's motion for summary

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

judgment on the First and Fourteenth Amendment claims, but denied Mott's motion with regard to the Fourth Amendment claim, because disputed issues of material fact existed as to whether Mott had arguable probable cause to charge Jacobson with obstructing legal process with force. After a trial, a jury determined that Mott had arguable probable cause to arrest and detain Jacobson. Jacobson moved for a new trial pursuant to Federal Rule of Civil Procedure 59, and the district court denied the motion. Jacobson appeals, and we affirm.

I.

At approximately 10:30 p.m. on Saturday, June 18, 2005, Mott, a deputy sheriff for the Mille Lacs County Sheriff's Office, arrived at Fat Jack's Cabaret to arrest Jacobson based on an outstanding warrant for driving under a cancelled license. Mott was accompanied by two Minnesota state troopers and an intern. Jacobson was working as a bartender at Fat Jack's when Mott confronted him and asked him to come outside.

Once outside, Mott informed Jacobson that there was an outstanding warrant for his arrest, and according to Jacobson, Mott told Jacobson that he did not know what the warrant was for and that he did not have to tell Jacobson. Mott testified that after he told Jacobson that he was under arrest, Jacobson said, "[n]o, this is bullshit," and became uncooperative.

Although Jacobson denied that he resisted arrest, Mott testified that when he reached out to put his hand on Jacobson's arm, Jacobson broke Mott's grip and pulled his arm away. Jacobson then pulled his arm away from Mott a second time, and Mott grabbed Jacobson's arm and held him against a parked car with the assistance of the two state troopers. Mott explained that while Jacobson was held against the car, Jacobson began to push himself away from the car, and he refused to cooperate. After

holding Jacobson against the car, Mott and the troopers were able to handcuff him, and then to place him in Mott's squad car.

Jacobson was taken to the jail, and Mott completed a form labeled "authority to detain," which listed "charge information" for Jacobson. The form stated that Jacobson was arrested for committing two gross misdemeanors – obstructing legal process with force, in violation of Minn. Stat. § 609.50 subd. 1(2) and 2(2), and driving after cancellation as specified in the outstanding arrest warrant. Jacobson was detained at the jail over the weekend and released late in the morning on Monday, June 20.

In a Minnesota state criminal complaint, an assistant county attorney charged Jacobson with gross misdemeanor obstructing legal process with force, as listed by Mott on the jail form, and with simple misdemeanor obstructing legal process, in violation of Minn. Stat. § 609.50 subd. 1(2) and 2(3). Before the state criminal trial, a state district court dismissed the gross misdemeanor obstruction with force charge for lack of probable cause. The state court, however, concluded that there was sufficient probable cause to charge Jacobson with simple misdemeanor obstruction. A jury later found Jacobson not guilty on that charge.

Jacobson then filed suit in federal district court against Mott and the two state troopers who were involved in his arrest. Jacobson alleged a cause of action under 42 U.S.C. § 1983, asserting that the law enforcement officers violated his First, Fourth, and Fourteenth Amendment rights. Jacobson also alleged a state-law claim of malicious prosecution.

The district court granted summary judgment in favor of the two state troopers on all of Jacobson's claims. The court also determined that disputed issues of material fact precluded granting summary judgment in favor of Mott on Jacobson's Fourth

Amendment claim under § 1983, but granted summary judgment in favor of Mott on Jacobson's remaining claims.

Jacobson's case proceeded to a jury trial on his claim that Mott violated his Fourth Amendment rights. At trial, given the qualified immunity defense available to Mott, the issue was whether Mott had "arguable" probable cause to arrest and detain Jacobson for obstructing legal process with force or violence. Jacobson proposed that the court give the jury a specific instruction on the meaning of "force or violence," but the court rejected this request.

The jury concluded that Mott had arguable probable cause to arrest and detain Jacobson for obstructing legal process with force or violence. Jacobson then filed a motion for a new trial pursuant to Federal Rule of Civil Procedure 59, asserting that the district court erred in instructing the jury on the definition of "force or violence," and in not permitting Jacobson to introduce evidence of his acquittal on the simple misdemeanor obstruction charge. The court denied Jacobson's motion for a new trial.

Jacobson appeals, raising the arguments presented in his motion for a new trial. Jacobson also contends that the district court erred in its summary judgment ruling by concluding that he was collaterally estopped from arguing that probable cause did not exist for the simple misdemeanor obstruction charge.

II.

Jacobson first asserts that the district court erred by failing to instruct the jury specifically on the definition of "force or violence." The district court has broad discretion in crafting instructions, and we review the district court's jury instructions for abuse of discretion. Our primary consideration is whether "the jury instructions, taken as a whole, fairly and adequately represent the evidence and applicable law."

-4-

*McCoy v. Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737, 744 (8th Cir. 2010) (internal quotation omitted).

When Mott arrested Jacobson, he believed that there was probable cause to charge him with gross misdemeanor obstructing legal process with force, in violation of Minn. Stat. § 609.50 subd. 1(2) and 2(2). The obstruction statute applies to an individual who "obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties." Minn. Stat. § 609.50 subd. 1(2). If the obstructionist act "was accompanied by force or violence or the threat thereof," the violation is a gross misdemeanor. *Id.* § 609.50 subd. 2(2); *see also id.* § 609.02 subd. 4 (defining gross misdemeanor). If force or violence was not involved, however, the violation is a simple misdemeanor. *Id.* § 609.50 subd. 2(3); *see also id.* § 609.02 subd. 3 (defining misdemeanor).

"In the wrongful arrest context, officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable." *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008). The issue at trial, therefore, was whether Mott had "arguable probable cause" to arrest and detain Jacobson for obstructing legal process with force, such that Mott was protected by qualified immunity and not liable under § 1983 for Jacobson's detention. *Id.* Jacobson requested a jury instruction that expressly defined "force or violence," as used in § 609.50, as "intentionally inflicting, attempting to inflict or threatening to inflict bodily harm upon another, or intentionally causing fear of another of immediately [sic] bodily harm." This proposed instruction was based on commentary in the Minnesota Practice Series Jury Instruction Guides-Criminal ("CRIMJIG"). The commentary cites an instruction related to criminal sexual conduct as a source for the definition of "force or violence." *See* Minn. Dist. Judges Ass'n, CRIMJIG 24.26 cmt.; *see also* Minn. Dist. Judges Ass'n, CRIMJIG 12.01.

The district court declined to adopt Jacobson's proposed instruction. Instead, the court instructed the jury that "[t]he terms force and violence are distinct and common terms that you are to construe according to their common usage and understanding." In denying Jacobson's motion for a new trial, the court explained that its instruction was consistent with the Supreme Court of Minnesota's interpretation of the obstructing legal process statute in *State v. Engholm*, 290 N.W.2d 780, 784-85 (Minn. 1980), and that no Minnesota appellate court decision required the use of Jacobson's proposed definition of force.

To resolve Jacobson's challenge to a jury instruction applying Minnesota law, we follow decisions of the Supreme Court of Minnesota, and if there is no decision directly on point, then we predict how that court would decide the issue. *See In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 391 F.3d 907, 911 (8th Cir. 2004). In *Engholm*, the Minnesota court addressed whether there was sufficient evidence to support a conviction for obstructing legal process with force or violence. *See* 290 N.W.2d at 783-84. In considering the evidence, the court noted that the trial court's jury instruction informed the jury that the phrase "force or violence or the threat thereof" was to be "construed according to common usage." *Id.* at 784. The court also explained that the terms "are not defined in the statute, and, absent statutory definition, words are to be construed according to their common and approved usage." *Id.*

The court in *Engholm* also rejected the defendant's argument that the obstruction of legal process statute was unconstitutional because the phrase "force or violence or the threat thereof" is overly broad and vague, and because the phrase does not establish a meaningful standard that distinguishes between simple misdemeanor violations and gross misdemeanor violations. *See id.* at 784-85. The court concluded that there was a distinction between nonviolent acts and acts committed with force or violence, and that "[t]he lack of a statutory definition for these words does not mean

that the application of this distinction is standardless; rather, the words have such a distinct and common usage that they require no further definition." *Id.* at 785.

Jacobson asserts that subsequent cases have undermined the Supreme Court of Minnesota's interpretation of the obstruction statute in *Engholm*. Jacobson highlights *State v. Krawsky*, 426 N.W.2d 875 (Minn. 1988), where the court determined that the obstruction statute is directed only at acts that physically obstruct or interfere with an officer. *Id.* at 877. Jacobson asserts that after *Krawsky*, every obstruction – simple or gross misdemeanor – must involve some amount of physical interference, so the definition of "force" in his proposed instruction is necessary to ensure that not every obstruction is a gross misdemeanor.

In our view, the interpretation of "force or violence" in *Engholm* is consistent with the court's reading of the obstruction statute in *Krawsky*. After *Krawsky*, a definition of force is not needed to distinguish between simple misdemeanor obstruction and gross misdemeanor obstruction with force, because not all violations of the obstruction statute must involve some amount of force. In fact, the court in *Krawsky* expressly noted that the obstruction statute may be used to punish words that have the effect of physically obstructing an officer. *See* 426 N.W.2d at 877. The court in *Engholm* determined that the ordinary meaning of "force or violence" distinguishes simple misdemeanor obstruction from gross misdemeanor obstruction with force, and nothing in *Krawsky* casts doubt on that conclusion.

Jacobson also argues that his proposed instruction was approved by a Minnesota Court of Appeals in *State v. Clancy*, No. C9-01-710, 2002 WL 233913 (Minn. Ct. App. Feb. 19, 2002) (unpublished). In *Clancy*, the court considered whether the trial court erred in refusing to instruct the jury that oral statements alone are insufficient to support a conviction under the obstruction statute. *Id.* at *3-4. In concluding that the trial court did not err, the court noted that the jury instructions included a definition of force, which was essentially the same definition that Jacobson

proposed. *Id.* at *4. *Clancy* did not hold, however, that an instruction expressly defining "force or violence" was necessary. And of course *Clancy*, an unpublished decision of the Minnesota Court of Appeals, could not supersede the Supreme Court of Minnesota's decision in *Engholm*.

Although the Supreme Court of Minnesota's discussion in *Engholm* of the jury instruction concerning "force or violence" was not strictly necessary to the holding in that case, we believe this considered *dicta* is the best evidence of how the state court would interpret Minn. Stat. § 609.50 subd. 1(2) and 2(2). *See In re W. Iowa Limestone, Inc.*, 538 F.3d 852, 866 (8th Cir. 2008). Because the district court's instructions were consistent with the Supreme Court of Minnesota's interpretation of the obstruction statute in *Engholm*, we conclude that the court did not abuse its discretion in rejecting Jacobson's proposed instruction.

III.

Jacobson also raises two arguments relating to the simple misdemeanor obstruction charge. He first contends that in resolving the pretrial motions for summary judgment, the district court erred in stating that Jacobson would be collaterally estopped from challenging the existence of probable cause for the simple misdemeanor obstruction charge under *Crumley v. City of St. Paul*, 324 F.3d 1003 (8th Cir. 2003). The district court explained that Jacobson's § 1983 action was based "not upon the misdemeanor obstruction charge for which the state court found probable cause . . . , but upon the gross misdemeanor charge for which the state court's decision favored Jacobson." In *dicta* placed in a footnote, the court added that "[b]ased upon the reasoning in *Crumley*, Jacobson would be barred from litigating whether probable cause existed for the simple obstruction charge." Jacobson argues that such a ruling would be a misapplication of *Crumley*, because disputed issues of fact in a § 1983 action must be resolved in favor the nonmovant on a motion for summary judgment, while a probable cause finding in state court need not follow that approach.

Whatever the merit of Jacobson's argument about *Crumley*, it supplies no basis to reverse the district court's judgment. The jury found that Mott had arguable probable cause to arrest and detain Jacobson for the gross misdemeanor offense of obstruction. This finding entitled Mott to qualified immunity on Jacobson's § 1983 claim that Mott unlawfully detained him in violation of the Fourth Amendment, and it is of no moment whether Mott also had arguable probable cause to arrest for a different offense. In any event, it follows *a fortiori* from the jury's verdict that Mott also had arguable probable cause to arrest Jacobson for the lesser included simple misdemeanor offense.

Second, Jacobson contends that the district court erred in excluding evidence of his acquittal in state court on the simple misdemeanor obstruction charge, but we see no abuse of discretion. As the district court explained, the state court acquittal determined only that the State failed to prove *beyond a reasonable doubt* that Jacobson committed the simple misdemeanor obstruction offense. This determination was not probative on the entirely different question at issue in the federal trial – namely, whether Mott had *arguable probable cause* to arrest and detain Jacobson for gross misdemeanor obstruction. The jury *was* advised that the state court ultimately determined that there was not probable cause to support the gross misdemeanor charge; this evidence was probative and helpful to Jacobson. But the district court reasonably determined that introducing evidence concerning a state-court determination about a state criminal charge that was not at issue in the federal trial was likely to cause confusion and potential prejudice to Mott. *See* Fed. R. Evid. 403.

\* \* \*

The judgment of the district court is affirmed.

_____