CONNOLLY, Judge
Appellant challenges the denial of his petition for the reinstatement of his driving privileges. Because appellant has not shown that his constitutional rights were violated by the deputy's failure to inform him that he could refuse to perform the field sobriety tests, and because the deputy did not err in expanding his traffic stop of appellant into a driving under the influence investigation or in arresting appellant for driving under the influence, we affirm.
*660 FACTS
At 1:20 a.m. on a Saturday in November 2017, a deputy stopped a truck that he had observed drive outside the traffic lane and fail to signal 100 feet before turning. He also observed an equipment violation. The deputy approached the truck and identified the driver as appellant Leland Otto. The deputy saw that appellant's eyes were bloodshot and watery, heard that appellant's speech was slightly slurred, and smelled alcohol. When asked to produce his license, appellant attempted unsuccessfully to remove it from his wallet; he then gave the wallet to the deputy, who removed the license without difficulty. Appellant admitted to the deputy that he had drunk two or three beers.
The deputy suspected that appellant was under the influence of alcohol, told appellant that he wanted to be sure appellant was "okay to continue driving" and asked appellant to get out of the truck to perform some field sobriety tests. Appellant told the deputy that, because of back surgery, he did not want to perform tests that involved movement, so the deputy administered three tests that did not involve movement.
The first was the Horizontal Gaze Nystagmus (HGN) test. Appellant did not comply with the deputy's instruction to follow the tip of the deputy's finger with his eyes; the deputy noted this and terminated the test. The second test was counting backwards from 67 to 54; appellant performed the test, then voluntarily repeated it but stopped at 55, not 54. The third test involved finger dexterity; appellant focused only on his left hand and stopped the test before completing it.
Based on the results of the tests, the deputy gave appellant a preliminary breath test (PBT). While waiting for the result, appellant told the deputy, "I'm out of here, I'm going home." The PBT sample appellant provided revealed an alcohol concentration of 0.096, and the deputy arrested him for driving under the influence (DUI). Appellant was given a breath test that produced a result of 0.09; as a result, his license was revoked.
Appellant filed a petition to reinstate his driving privileges. Based on the deputy's testimony at the hearing on that petition, the district court made findings and incorporated them into an order denying appellant's petition.
ISSUES
1. Did the deputy have a duty to inform appellant that his participation in field sobriety tests was optional?
2. Did the deputy err by expanding the traffic stop into a DUI investigation or by arresting appellant for DUI?
ANALYSIS
1. Failure to tell appellant that the field sobriety tests were optional
This court "reviews de novo the procedural due process afforded a party." Zellman ex rel. M.Z. v. Indep. Sch. Dist. No. 2758 , 594 N.W.2d 216, 220 (Minn. App. 1999).
Although the deputy honored appellant's refusal to perform field sobriety tests requiring movement, appellant argues on appeal, as he argued to the district court, that the deputy had an obligation to tell appellant that he could refuse all field sobriety tests and urges us to promulgate a "judicial requirement of the notification of the option of refusal." The district court declined to do this, saying it "[could] not find any provisions in [s]tate statutes or case law suggesting officers are required to relay to drivers information regarding the voluntariness of their participation in field sobriety testing" and noting that "[appellant's]
*661 passionate argument that drivers should be provided with notice of their right to refuse to comply with field sobriety testing is best directed at our legislature." We agree. "[T]he task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court." Tereault v. Palmer , 413 N.W.2d 283, 286 (Minn. App. 1987), review denied (Minn. Dec. 18, 1987). Nor does it fall to the district court.
Moreover, this court has already explicitly rejected appellant's proposal. See, e.g. , Vondrachek v. Comm'r of Pub. Safety , 906 N.W.2d 262, 269, 271 (Minn. App. 2017) (holding that "[a]n officer's request that a driver perform roadside sobriety testing is not a search within the meaning of the Fourth Amendment" and that a PBT administered after field sobriety tests have provided probable cause to believe a driver is impaired is a seizure incident to arrest for which no warrant is required; noting that drivers can and do decline field sobriety tests and preliminary breath tests), review denied (Minn. Feb. 28, 2018); State v. Kline , 351 N.W.2d 388, 390 (Minn. App. 1984) ("[G]iving a Miranda warning in an implied consent situation can be confusing to the driver."); Butler v. Comm'r of Pub. Safety , 348 N.W.2d 827, 828 (Minn. App. 1984) (stating that, because a driver who is asked to do field sobriety tests is not subject to custodial interrogation, a Miranda advisory "is confusing to the driver"); see also Ruffenach v. Comm'r of Pub. Safety , 528 N.W.2d 254, 256 (Minn. App. 1995) ("The arresting officer has no affirmative duty to inform a driver of the right to an independent test.").
The district court did not err in concluding that the deputy had no duty to notify appellant that the field sobriety tests and the PBT were optional.
2. Legality of the DUI investigation and of appellant's arrest
Appellant argues that the deputy unlawfully expanded the traffic stop into a DUI investigation. Whether the expansion of the stop into an investigation is legal is a mixed question of fact and law: the facts cannot be reversed unless clearly erroneous, but whether those facts provided a valid basis for the investigation is a question of law. Berge v. Comm'r of Pub. Safety , 374 N.W.2d 730, 732 (Minn. 1985).
An officer must have a reasonable, articulable suspicion that a driver is under the influence of alcohol before requesting either a field sobriety test or a PBT. State v. Klamar , 823 N.W.2d 687, 696 (Minn. App. 2012). "[O]ne objective indicator of intoxication [can] constitute reasonable and probable grounds to believe a person is under the influence." Holtz v. Comm'r of Pub. Safety , 340 N.W.2d 363, 365 (Minn. App. 1983).
The deputy here had multiple grounds. First, appellant was driving outside the traffic lane and failed to signal a turn at 1:20 on a Saturday morning. Erratic driving and failing to observe traffic laws can be indicia of intoxication, State v. Driscoll , 427 N.W.2d 263, 265 (Minn. App. 1988), and doing so at a time of day when drinking is often found to be involved can provide an objective basis to investigate DUI. State v. Lee , 585 N.W.2d 378, 383 (Minn. 1998).
Second, the deputy saw that appellant's eyes were bloodshot and watery and that appellant smelled of alcohol, both of which have been held to justify field sobriety testing. See Klamar , 823 N.W.2d at 696 (bloodshot and watery eyes);
*662 State v. Lopez , 631 N.W.2d 810, 814 (Minn. App. 2001) (odor of alcohol), review denied (Minn. Sept. 25, 2001).[1]
Third, appellant's coordination was impaired to the point where he was unable to take his license out of his wallet. Appellant argues that the deputy should have noted appellant's date of birth on the license and considered appellant's age, 68, as a "significant factor" in his inability to remove his license. But appellant offers no support for the view that 68-year-olds are unable to perform tasks requiring normal dexterity, and he offered the deputy no explanation of any physical impairment that would prevent or impede his removal of the license.
Fourth, appellant admitted consuming alcohol. He points out that consuming alcohol is not illegal; however, that does not alter the fact that consuming alcohol, while not sufficient for a finding of DUI, is necessary to such a finding and may therefore contribute to it.
The district court did not err in concluding that the deputy had a reasonable, articulable suspicion to suspect that appellant was not "okay to continue driving" and expand the traffic stop into a DUI investigation.
Appellant also argues that the deputy lacked probable cause to arrest him for DUI. A determination of probable cause is a mixed question of fact and law; once the facts have been found, the court must apply the law to determine if probable cause exists. Clow v. Comm'r of Pub. Safety , 362 N.W.2d 360, 363 (Minn. App. 1985). An appellate court reviews the district court's factual findings under the clearly erroneous standard, but independently reviews the district court's legal determinations. State v. Wiernasz , 584 N.W.2d 1, 3 (Minn. 1998).
An admission of drinking, coupled with other indicators of intoxication, is generally sufficient probable cause to arrest. State v. Laducer , 676 N.W.2d 693, 697-98 (Minn. App. 2004). The district court found that "[appellant's] performance on the field sobriety test and PBT indicated various signs of impairment. Those signs of impairment, along with [appellant's] admission to having consumed alcohol, established sufficient probable cause for the deputy to arrest [appellant] for a DWI violation" and led the district court to conclude that, "based upon [appellant's] admission to having consumed alcohol, his glassy and watery eyes, the odor of alcohol, and the results of his field sobriety testing, [the deputy] had probable cause to justify arresting [appellant] for DWI."
Appellant argues that, because the deputy's cross-examination showed that some indicators of intoxication were not present while appellant remained in his car, (i.e., appellant pulled over and came to a complete stop, was not confused by the deputy's questions, and was not incoherent), "any conclusions [the deputy] may have made after the initial stage of his investigation, [i.e., while appellant remained in his car, are] open to considerable doubt." But, before appellant left his car, the deputy had noted his watery and bloodshot eyes, the smell of alcohol, and his inability to remove his license from his wallet, thus providing at least three indicators of impaired coordination before the field sobriety tests and the PBT provided additional probable cause, and appellant's actual breath test result was the determinative probable cause for his arrest.
*663 Finally, appellant argues that the deputy should have attributed appellant's difficulties with the field sobriety tests to appellant's age, 68, rather than to intoxication. But appellant provides no factual or legal support for the view that drivers aged 68 and older are not to be held to the same standards on field sobriety tests as younger drivers.
DECISION
Appellant has not shown that the deputy had a constitutional or statutory obligation to tell appellant that he could refuse to perform the field sobriety tests; lacked a reasonable, articulable cause to expand appellant's arrest into a DUI investigation; or lacked probable cause to arrest appellant for DUI.
Affirmed.

Appellant attempts to distinguish Lopez on the ground that "a careful reading of Lopez indicates the odor of alcohol was connected to an open bottle in the car." But the smell of alcohol in an occupied vehicle where no alcohol is visible supports an inference that the smell comes from the vehicle's occupant.