*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0688

State of Minnesota,
Respondent,

vs.

Nancy Marie Banks,
Appellant.

**Filed March 4, 2024**
**Affirmed**
**Smith, John, Judge[*]**

Hennepin County District Court
File No. 27-CR-20-4342

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Gregory P. Holly, Richfield City Attorney, Holly Law, LLC, Richfield, Minnesota (for
respondent)

Paul P. Sarratori, Mesenbourg & Sarratori Law Offices, P.A., Coon Rapids, Minnesota (for
appellant)

     Considered and decided by Johnson, Presiding Judge; Cochran, Judge; and Smith,

John, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

**SMITH, JOHN**, Judge

We affirm the district court's order denying appellant's motion to suppress because the district court did not err in determining that, based on the arresting officer's observations of various traffic violations, there was reasonable, articulable suspicion to support an investigatory stop of appellant.

## FACTS

On February 15, 2020, appellant Nancy Marie Banks was driving northbound along Interstate 35-West (I-35W). An on-duty police officer began following Banks northbound on I-35W after merging from Highway 62. The officer followed Banks around two-to-three lengths back, first in a different lane and then in the same lane, for about one mile. After observing Banks "cross[] into my lane, nearly causing a traffic accident," "cross[] into the lane—into my lane of traffic in front of me without signaling," "speed up and then brake erratically," and her vehicle "swerving within its lane as it continued northbound," the officer stopped Banks. During the stop, the officer detected "an overwhelming [alcohol] odor" and observed that Banks's eyes were "very bloodshot," her speech "slightly slurred," and her reactions "very clumsy." As a result, the officer conducted field sobriety tests, which Banks failed. Banks admitted she "maybe had one drink" before driving.

The officer arrested Banks for driving while impaired (DWI), conducted routine booking after transport to the police station, and impounded her vehicle. As part of the booking, Banks was read a breath-test advisory, but refused to take the test, stating, "I'm not doing it." During the inventory search of the vehicle, several containers of alcohol

were located on the passenger side floorboard. Respondent State of Minnesota subsequently charged Banks with one count of gross-misdemeanor second-degree DWI, as Banks had two qualified prior impaired driving incidents, and one count of second-degree refusal to submit to chemical testing pursuant to Minn. Stat. § 169A.20, subds. 1(1), 2(1) (2020).

Before trial, Banks moved to suppress evidence obtained from the stop of her vehicle, arguing the stop was without justification because there was no "reasonable, articulable basis of unlawful conduct or unsafe driving conduct." The state opposed her motion. The district court denied Banks's motion to suppress on September 21, 2021, after a *Rasmussen* hearing. *See* Minn. R. Crim. P. 11.02; *State ex rel. Rasmussen v. Tahash*, 141 N.W.2d 3, 14 (Minn. 1965) (adopting a pretrial proceeding, or *Rasmussen* hearing, to determine the admissibility of evidence allegedly obtained by infringement of a defendant's constitutional rights).

Banks stipulated to the prosecution's case pursuant to Minn. R. Crim. P. 26.01, subd. 4. The district court found Banks guilty of the DWI- and breath-test-refusal charges on February 14, 2023. Banks was convicted and sentenced for the DWI.

Banks now appeals the district court's denial of her pretrial suppression motion.

**DECISION**

Banks challenges the district court's denial of her pretrial suppression motion, asking this court to reverse and dismiss her case because the officer did not have reasonable suspicion to stop her vehicle. This court reviews a district court's factual findings in a pretrial suppression order under a clearly erroneous standard. *State v. Gauster*, 752

N.W.2d 496, 502 (Minn. 2008). But "we review questions of reasonable suspicion de novo." *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000).

Although evidence obtained from an unconstitutional stop or seizure must be suppressed, *State v. Diede*, 795 N.W.2d 836, 842 (Minn. 2011), a police officer may constitutionally conduct a limited traffic stop without a warrant if the officer has reasonable, articulable suspicion of criminal activity. *State v. Munson*, 594 N.W.2d 128, 136 (Minn. 1999) (citing *Terry v. Ohio*, 392 U.S. 1, 22 (1968)). "The reasonable-suspicion standard is not high." *Diede*, 795 N.W.2d at 843 (quotation omitted). Reasonable suspicion simply requires "something more than a mere hunch," or particularized and objective facts supporting the suspected criminal activity. *State v. George*, 557 N.W.2d 575, 578 (Minn. 1997); *see also State v. Engholm*, 290 N.W.2d 780, 783 (Minn.1980) ("To lawfully stop a person. . . . The intrusion cannot be based on an inarticulate hunch and must be reasonable in light of the particular circumstances."). In evaluating whether reasonable suspicion exists, we consider the totality of the circumstances surrounding the stop. *Knapp v. Comm'r of Pub. Safety*, 610 N.W.2d 625, 628 (Minn. 2000).

Here, the police officer stopped Banks based on his observations that she violated two traffic laws: illegally changing lanes in an unsafe manner and failing to signal a lane change. The officer also observed Banks driving erratically. These three observations by the officer support a determination of reasonable suspicion based on the totality of the circumstances.

The officer first observed Banks illegally changing lanes, or drifting into neighboring lanes, in violation of Minn. Stat. § 169.18, subd. 7(1) (2020), which states:

4

> When any roadway has been divided into two or more clearly marked lanes for traffic . . . a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

The district court determined that the officer had reasonable suspicion to stop Banks's vehicle because Banks "crossed slightly into the neighboring lane of traffic on at least one occasion." Banks conceded that she did "briefly cross[] the dotted center line" at least once. Banks's vehicle's movements created reasonable suspicion because "the statutory violation of moving a vehicle from the lane occurs when even a fraction of the vehicle extends outside its lane." *Soucie v. Comm'r of Pub. Safety*, 957 N.W.2d 461, 464 (Minn. App. 2021), *rev. denied* (Minn. June 29, 2021).

The officer also observed that Banks's driving was dangerous, testifying that, when Banks "crossed into [his] lane," she "nearly caus[ed] a traffic accident." Because crossing into neighboring traffic lanes without first ensuring that the movement can be made safely violates Minn. Stat. § 169.18, subd. 7(1), the officer's observation of Banks's unsafe lane drift created an objective basis for a lawful vehicle stop. *See George*, 557 N.W.2d at 578.

But Banks argues that inconsistencies with the officer's testimony and the squad video evidence refute the finding that her driving was dangerous. To the extent there are any inconsistencies, we defer to the district court's determination—that the officer was a credible witness. *See State v. Klamar*, 823 N.W.2d 687, 691 (Minn. App. 2012) (citing *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989)). And although a single swerve within a lane is not sufficient to sustain the stop of a vehicle, a police officer's observation that a car is weaving repeatedly within its lane is. *Compare State v. Brechler*, 412 N.W.2d 367,

5

368 (Minn. App. 1987) (determining that a stop is improper if an officer only observes a driver swerve once within their lane of travel), *with State v. Dalos*, 635 N.W.2d 94, 96 (Minn. App. 2001) (distinguishing *Brechler* and holding that weaving continuously within one's lane is sufficient on its own to create reasonable suspicion). Here, the officer observed Banks's vehicle "swerving within its lane as it continued northbound," and the district court noted Banks "did not simply swerve once within her lane." An officer can even stop a vehicle if they observe weaving within a lane but do not believe that the driving violates any traffic laws. *State v. Morse*, 878 N.W.2d 499, 502 (Minn. 2016) (citing *State v. Ellanson*, 198 N.W.2d 136, 137 (Minn. 1972)). The officer had reasonable suspicion to justify stopping Banks's vehicle because Banks was weaving within her lane.

The officer next observed Banks fail to signal a lane change, nearly colliding with the officer's vehicle. *See* Minn. Stat. § 169.19, subd. 4 (2020) ("No person shall . . . move right or left upon a highway unless and until the movement can be made with reasonable safety after an appropriate signal. . . ."). A traffic violation—even a seemingly "insignificant" petty misdemeanor traffic violation—counts as reasonable suspicion of illegality and thus a proper basis for an investigatory stop. *State v. Anderson*, 683 N.W.2d 818, 823 (Minn. 2004). Because changing lanes without signaling violates Minn. Stat. § 169.19, subd. 4, the officer's observation is an objective basis for a lawful vehicle stop. *See State v. Jones*, 649 N.W.2d 481, 484 (Minn. App. 2002).

Finally, Banks asserts that the officer did not have reasonable suspicion justifying an investigatory stop because she exhibited "appropriate driving conduct" through the maintenance of a constant speed, navigation, and proper braking. This contradicts the

district court's findings that Banks's driving was erratic, and we do not reweigh the evidence. Additionally, a lawful vehicle stop does not require an observation of egregious driving; mere erratic driving provides reasonable, articulable suspicion of intoxication or wrongdoing sufficient to support an investigative traffic stop. *Otto v. Comm'r of Pub. Safety*, 924 N.W.2d 658, 661 (Minn. App. 2019) (determining that failing to signal a turn, among other grounds, provided reasonable suspicion).

The district court did not err in denying Banks's pretrial suppression motion because the totality of the circumstances as shown by the record—that Banks illegally and unsafely crossed into neighboring traffic lanes, illegally failed to signal a lane change, and drove erratically—supports a legal determination that the police officer had reasonable, articulable suspicion of a traffic violation.

**Affirmed.**